SIXTH DIVISION

January 31, 2003

Nos. 1-01-4203, 1-01-4355 Consolidated

NATALIE BUCKHOLTZ, as Independent Ex'r of the Estate of Frank Stajszczyk, Deceased,

Plaintiff-Appellee,

v.

Mac NEAL HOSPITAL; YOUSUF SAYEED; and JANYCE BLATT,

Defendants-Appellants,

(Harris Trust And Savings Bank, as Independent Ex'r of the Estate of Jorge B. Pollitt;
 Joan Briller; John B. Stengle; 
and Mary Pollard, 

 Defendants).

)))))))))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Jennifer Duncan-Brice

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Natalie Buckholtz brought this medical malpractice action against several defendants, 
including MacNeal Hospital
 (MacNeal)
, Yousuf Sayeed, M.D., and Janyce Blatt, 
C.R.N.A., after her father, Frank Stajszczyk, died at MacNeal
 following surgery.
  A jury returned a verdict in favor of plaintiff and the court entered judgment.  Defendants
(footnote: 1) filed post-trial motions for judgment notwithstanding the verdict (judgment 
n.o.v.
), a new trial or, in the alternative, for remittitur.  The trial court denied their motions.  Defendants now appeal.  For the reasons that follow, we affirm in part and reverse in part.

BACKGROUND

On May 4, 1995, Mr. Stajszczyk was admitted to MacNeal for femoral-popliteal bypass surgery to restore circulation to his left leg to help heal an ulcer on his left heel that had been present for several months.  Due to his medical history, he was at an increased risk for a coronary event during surgery and was assigned a cardiologist to monitor him before and after surgery.  On May 7, 1995, Dr. Joan Briller, a cardiologist at MacNeal, examined Mr. Stajszczyk and cleared him for surgery.  The surgery took place on May 8, 1995.

Prior to the surgery, between 12:55 p.m. and 1:30 p.m., Dr. Sayeed, the attending anesthesiologist, attempted to place a central venous catheter (“central line”) in the left internal jugular vein to assist in monitoring Mr. Stajszczyk during the procedure.  Dr. Sayeed made two unsuccessful attempts to place the catheter in the right internal jugular vein, and three or four unsuccessful attempts in the left internal jugular vein.  Dr. Sayeed enlisted the help of Dr. Hodgett, a surgical resident, who made two or three unsuccessful attempts in the left internal jugular vein.  Dr. Sayeed decided to forgo the placement of the central line, and the surgery commenced.

Mr. Stajszczyk was administered 7,500 units of Heparin, a blood anticoagulant, at 1:57 p.m. and 2:57 p.m.  
The Heparin administration was routine and necessary to ensure the prevention of clot formations during surgery.  Dr. Sayeed knew that Mr. Stajszczyk had received the Heparin.  

At 3 p.m., in order to raise Mr. Stajszczyk's blood pressure,
 Dr. Sayeed administered Neosynephrine in three 100-microgram boluses between 3 p.m. and 3:15 p.m.  The drug was then continued by intravenous drip from 3:25 to 4:05 p.m, at which time Dr. Sayeed stopped it.  At 3:45 p.m., Protamine was administered to reverse the effects of the Heparin.
  The surgery ended at approximately 4:30 p.m.

Shortly after 4:30 p.m., immediately after the procedure, there was a drop in Mr. Stajszczyk's blood pressure.  Chest X rays and a blood test were ordered.  Mr. Stajszczyk's hemoglobin level was between 3.6 to 4.2, representing a 60% loss of the oxygen-carrying capacity of his blood.  The chest X ray revealed a whiteout.  Dr. Stengle, the surgical resident, placed a chest tube in Mr. Stajszczyk, out of which a minimum of 1 to 1½ liters of blood was expelled.  In Dr. Stengle's opinion, that blood came from a hole in the left internal jugular vein that was made by one or more of the attempts to pass the central line.  Dr. Stengle testified that the lost blood must be replaced immediately.  Dr. Stengle admitted that it is the duty of the anesthesiology team to replace blood when it is lost.  Mr. Stajszczyk was given albumin at 5 p.m. and received his first unit of packed red blood cells at 5:10 p.m.  Mr. Stajszczyk died 5½ hours later at 10:07 p.m.

Plaintiff filed her initial complaint on May 6, 1997.  Plaintiff's third amended complaint contained two counts
(footnote: 2) against five defendants.  In count I, plaintiff alleged that the anesthesia defendants, Sayeed and Blatt (the nurse anesthetist), were negligent in failing to timely perceive that the attempts to place a central line caused a large hemorrhage in Mr. Stajszczyk's chest that was likely to cause harm, or failing to timely appreciate and treat the resulting hemorrhage caused by the perforation of his left internal jugular vein.  Count II made identical allegations against the attending surgeon, Jorge Pollitt, M.D.,
(footnote: 3) and the surgical resident, John Stengle, M.D.  Counts I and II also alleged that MacNeal
 was vicariously liable under an agency theory for the acts or omissions of each of the doctors and the nurse anesthetist.

During trial, conflicting testimony was given regarding Mr. Stajszczyk's cause of death.  Defendants' theory was that the cause of death was not due to the hemorrhage but, rather, from a myocardial infarction (heart attack) resulting from a blood clot.  Plaintiff's expert, Dr. Katz, however, opined that the drop in blood pressure from the hemorrhage led to a myocardial infarction.  At the close of plaintiff's case, the trial court entered directed verdicts in favor of defendants Pollitt and Stengle.  At the close of all the evidence, the court entered a directed verdict in favor of MacNeal on plaintiff's apparent agency allegations, but did not direct a verdict on plaintiff's implied (actual) agency theory.  The case was submitted to the jury, which returned a general verdict in favor of plaintiff and against defendants Sayeed, Blatt, and MacNeal in the amount of $801,642.57.  The jury also answered a special interrogatory finding that Sayeed and Blatt were agents of the hospital.

Defendants now appeal from the judgment entered against them.  Plaintiff has filed no cross-appeal from the directed verdicts entered against her.
  Defendants contend that the trial court erred in denying defendants' motions for judgment 
n.o.v.
, a new trial or, in the alternative, for remittitur.  MacNeal further contends that the trial court should have directed a verdict in its favor as to the actual agency issue.

STANDARD OF REVIEW

We first address the standards of review that are applicable in this appeal for a directed verdict, judgment 
n.o.v.
, a new trial and remittitur.  We apply the 
de novo
 standard
 of review to the trial court's 
denial of a motion for directed verdict
 as well as its denial of a motion for judgment 
n.o.v. Donaldson v. Central Illinois Public Service Co.
, 199 Ill. 2d  63, 89, 767 N.E.2d 314, 330 (2002); 
Gathings v. Muscadin
, 
318 Ill. App. 3d  1091, 1093,
 743 N.E.2d 659, 660 (2001).  "[V]erdicts ought to be directed and judgments 
n.o.v.
 entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d  494, 510, 229 N.E.2d 504, 513-14 (1967).  “In making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of the witnesses.” 
Donaldson v. Central Illinois Public Service Co.
,
 
199 Ill. 2d  63, 89,
 767 N.E.2d 314, 331 (2002).  The standard 
to be used in determining whether to grant a new trial
 is whether the jury's verdict was against the manifest weight of the evidence.
 
Maple 
v. Gustafson
, 
151 Ill. 2d  445, 455, 
 
603 N.E.2d 508
, 513 (1992).
  “ 'A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence.' ”
 Maple
, 151 Ill. 2d at 454, 603 N.E.2d at 512-13, quoting 
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d  1082, 1089, 560 N.E.2d 969, 973 (1990).  
This court will not reverse a trial court's ruling on a motion for a new trial except in those instances where it is affirmatively shown that the trial court clearly abused its discretion. 
Maple
, 
151 Ill. 2d at 455,
 
603 N.E.2d at
 513
.  In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. 
Maple
, 
151 Ill. 2d at 455,
 
603 N.E.2d at
 513
.  Additionally, the standard of review
 we apply in deciding whether the trial court erred in denying defendants' motions for remittitur is whether the trial court abused its discretion. 
Hollowell v. Wilder Corp. of Delaware
,
 318 Ill. App. 3d  984, 991,
 743 N.E.2d 707, 713 (2001).

ANALYSIS

Defendants Sayeed and Blatt 
are Not Entitled to a Judgment 
n.o.v.

 During the trial, the jury was presented with hours of expert opinion from retained and independent physicians.  The jury had ample opportunity to observe the witnesses and measure their credibility.
  
The testimony supported plaintiff's assertion that defendants were negligent and that their negligence proximately caused Mr. Stajszczyk's death.  Dr. Katz testified that a reasonably well-qualified anesthesiologist or nurse anesthetist should have diagnosed Mr. Stajszczyk's bleed by 3 p.m.
 and treated it appropriately, by getting a blood test (hematocrit or CBC) and then giving blood.
  Dr. Katz based his opinion on the fact that both Sayeed and Blatt knew that: (1) numerous attempts were made to place the central line; (2) two large doses of Heparin had been administered which prevented Mr. Stajszczyk's blood from clotting; and (3) Mr. Stajszczyk was given a drug, Neosynephrine, to raise his blood pressure.  All of these were clues that should have led them suspect that Mr. Stajszczyk was bleeding, which an appropriately ordered blood test could have confirmed.  It was undisputed that the blood test could have been ordered but was not.  Dr. Katz opined that the drop in blood pressure led to the myocardial infarction, a cardiac arrest and ultimately Mr. Stajszczyk's death.  Dr. Jentzen, a forensic pathologist, another of plaintiff's expert witnesses, also testified that the blood loss caused or contributed to Mr. Stajszczyk's death.  The opinions of plaintiff's expert witnesses were bolstered by those of the nonretained medical witnesses.  Significant testimony was adduced against defendants' blood clot theory.  Considering the entirety of the evidence, viewed in its aspect most favorable to the plaintiff, it cannot be said that all of the evidence so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand.

Defendants Sayeed and Blatt 
are Not Entitled to a New Trial

As noted earlier, the jury was presented with hours of expert opinion from retained and independent physicians.  T
he trier of fact
 
decide
s the weight to be accorded to expert testimony. 
Sottile v. Carney
, 
230 Ill. App. 3d  1023
, 1031, 
596 N.E.2d 140, 145
 (1992).  The jury's verdict against Sayeed and Blatt was not against the manifest weight of the evidence.  
Thus, Sayeed and Blatt are not entitled to a new trial
 on that basis.

Sayeed and Blatt further contend, however, that they are entitled to a new trial because the trial court committed numerous reversible errors.  They first argue that the trial judge's response to the jury's written questions during its deliberations constituted prejudicial error.  The jury received Illinois Pattern Jury Instructions, Civil, No. 36.01 (1995) (hereinafter IPI Civil (1995)), which provides that the jury would have no occasion to consider damages if it decided for the defendants on the question of liability.  The jury was also given IPI Civil (1995) No. 31.04, which states that if the jury found for the plaintiff on the question of liability, then it must award reasonable and fair compensation.  
During closing argument, plaintiff's counsel had stated that “[b]ased on the law and the evidence in this case
, fair and reasonable compensation for Mrs. Buckholtz' premature loss of her father is $800,000 to $1.2 million.”  Counsel for Sayeed and Blatt had responded in closing argument that the jury “must not ask them to compensate Natalie Buckholtz in any amount, especially not in the amount of $800,000 to $1.2 million, that amount which was boldly requested of you by [plaintiff's counsel].”  During the course of deliberations, the jury sent a written question to the court which read as follows: “Do we have to work within the range?  Do we need to stay between $800,000 - 1.2 m[illion]?” The trial court contacted all counsel by telephone on a conference call to advise them of the communication received from the jury.  In the discussion that ensued, the trial judge advised counsel that she intended to instruct the jury as follows: “No.  You may award any amount which you believe is fair and reasonable.”  The court thereafter did so in handwriting on the same piece of paper containing the jury's handwritten question and initialed the response.  Defendants' argument on appeal involves a factual dispute between trial counsel for Sayeed and Blatt and the trial judge as to what transpired during the conference call.  Counsel contended below, and contends on appeal, that she specifically objected to any language being included in the response other than the single word “No” and that the response was given over her objection.  The trial court addressed this dispute at length in its post-trial order.  The trial court found that defense counsel's recollection of the conference call was inaccurate and that the court's written response was by agreement of all parties.

In any event, we reject defendants' argument that the response constituted prejudicial error.  
The jurors received IPI Civil (1995) No. 36.01 instruction telling them they would have no occasion to consider damages if they decided for the defendants on the question of liability.  The jurors were also given, without objection, a modified version of IPI Civil (1995) No. 31.04  telling them that, if they decided for the plaintiff on the question of liability, they must then fix the amount of money that would reasonably and fairly compensate her for funeral and burial expenses and pecuniary loss.
  The trial court's response to the jury question regarding the amount of damages 
was “No.  You 
may
 award any amount which you believe is fair and reasonable.
” (Emphasis added.) We reject defendants' assertions that the 
additional language in the trial court's response interjected the trial court's suggestion into the jury's deliberations that 
the court
 had concluded liability in favor of the plaintiff and that damages 
should 
be awarded or, at the very least, conveyed the impression that the judge perceived that the jury had decided liability in plaintiff's favor and 
that she agreed
 with this determination.
  
The trial court handled the jury's question in an appropriate manner.  
We conclude that no prejudicial error occurred.

Defendants further argue that plaintiff's counsel's repeated violations of the trial court's 
in limine
 order barring plaintiff's references to charting errors constituted prejudicial error, warranting a new trial.  We disagree.  The record shows that there were only two instances where “charting errors” were raised.  Defendants objected two times during the direct examination of plaintiff's anesthesiology expert, Dr. Katz.  Both times were in response to inadvertent and unsolicited statements by Dr. Katz.  Any possible prejudice to defendants as a result of the two isolated comments by Dr. Katz was cured by concise instructions by the court to disregard the testimony.  
A jury is presumed to have followed the court's instruction to disregard testimony. 
McDonnell v. McPartlin
, 
192 Ill. 2d  505
, 535, 736 N.E.2d 1074, 1091 (2000). 
 In sum, the trial court committed no errors warranting a new trial for defendants.

Defendants 
Sayeed and Blatt are not Entitled to Remittitur

Sayeed and Blatt also argue that the trial court abused its discretion in failing in the alternative to grant their motion for a remittitur because the judgment was excessive in light of the evidence.  Here, the jury returned a verdict for plaintiff in the amount of $801,642.57, of which $1,642.57 was allocated as compensatory damages for funeral expenses, and $800,000 was allocated as pecuniary damages for the decedent's adult daughter's loss of companionship.  Sayeed and Blatt concede that a father-daughter relationship is a special one, but they contend that the “astounding” $800,000 award for pecuniary loss is excessive, unjustified, and unreasonable and can only be construed as impermissible punitive damages.

The determination of the amount of damages is a function reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court.  
Richardson v. Chapman
, 175 Ill. 2d  98, 113, 676 N.E.2d 621, 628 (1997).  A jury's award will not be subject to remittitur if it falls within the flexible range of conclusions reasonably supported by the facts. 
Lee v. Chicago Transit Authority
, 152 Ill. 2d  432, 470, 605 N.E.2d 493, 509-10 (1992).  A verdict will not be set aside by a court “unless it is so excessive as to indicate that the jury was moved by passion or prejudice, or that it exceeds the necessarily flexible limits of fair and reasonable compensation or is so large that it shocks the judicial conscience.” 
Richter v. Northwestern Memorial Hospital
, 177 Ill. App. 3d  247, 257, 532 N.E.2d 269, 275 (1988).

Where a decedent leaves a daughter, the law presumes a pecuniary loss which obtains solely from the daughter's relationship to the decedent. See, 
e.g.
,
 Balzekas v. Looking Elk,
 
254 Ill. App. 3d  529, 537
, 627 N.E.2d 84, 90 (1993).  Plaintiff presented substantial evidence concerning her loss of society to bolster the legal presumption that she sustained substantial pecuniary loss.  The jury learned how close decedent was to his only child, Natalie.  Natalie and her parents came to America unable to speak English and had no other relatives here, besides one cousin.  When Natalie was young, the decedent was the nurturing parent due to limitations of Natalie's mother.  The decedent never learned to drive, so Natalie drove him around and did whatever he needed her to do.  They looked through the paper for sales, went shopping, went for walks, and cooked together.  The decedent lived with Natalie and her husband for the last 10 years of his life.  According to the life tables in evidence, which were not contradicted, decedent's life expectancy was 8.2 years.

Sayeed and Blatt chose to try to convince the jury that the decedent was so ill that his death was momentarily imminent.  Regardless of his medical history, the undisputed evidence from Natalie Buckholtz, her husband, Frank, and Dr. Stephen Gawne, who was Mr. Stajszczyk's own treating physician, was that Mr. Stajszczyk was a strong, independent and determined man who would do anything to walk and 
 to continue to enjoy life with his family.
  The trial court agreed that there was sufficient evidence presented at trial to support the jury's award of damages.  The trial court did not abuse its discretion in denying Sayeed and Blatt' motion for remittitur.

Defendant MacNeal is Entitled to Judgment 
n.o.v.
 

  MacNeal contends that the trial court erred when it denied MacNeal's motion for a directed verdict and its motion for judgment 
n.o.v.
 on the issue of implied (actual) agency.  
The trial court granted MacNeal's motion for a directed verdict on the issue of apparent agency based on the absence of any evidence of reliance on plaintiff's part.  Plaintiff has not cross-appealed from that decision and it is not before this court.  Thus, the issue on appeal involves considerations of whether defendants Sayeed and Blatt were the 
actual
 agents of MacNeal.

Actual agency may be express or implied. 
C.A.M. Affiliates, Inc. v. First American Title Insurance Co.
, 
306 Ill. App. 3d 1015,
 1021, 715 N.E.2d 778, 783 (1999).  An implied agency relationship is an actual agency relationship that is established through circumstantial evidence. 
See 
Petrovich v. Share Health Plan of Illinois, Inc.
,
 
188 Ill. 2d  17, 42, 
719 N.E.2d 756, 770 (1999)
 
(“
Implied authority is actual authority, circumstantially proved”).
  
Although the question of whether an agency relationship exists is a question of fact, a court may decide this issue as a matter of law if only one conclusion may be drawn from the undisputed facts. 
Churkey v. Rustia
, 329 Ill. App. 3d  239, 242-43
, 768 N.E.2d 842, 845
 (2002).  The burden of proving the existence of an agency relationship is on the party seeking to charge the alleged principal. 
Pyskaty v. Oyama
,
 
266 Ill. App. 3d  801, 824,
 641 N.E.2d 552, 569 (1994).

It is well established that the decision to treat a patient in a particular manner is generally a medical question entirely within the discretion of the treating physician and not the hospital. See, 
e.g.
,
  Zajac v. St. Mary of Nazareth Hospital Center
, 212 Ill. App. 3d  779, 571 N.E.2d 840 (1991)
.
  It is equally well established, however, that liability may result under the doctrine of 
respondeat superior
 where a person's status as an independent contractor is negated under an agency theory
. 
Petrovich v. Share Health Plan of Illinois, Inc
.,
 188 Ill. 2d  17, 42, 719 N.E.2d 756, 770 
(1999). 
 Although a hospital may be vicariously liable 
for the negligence of an independent contractor
 under an apparent agency theory (
Gilbert v. Sycamore Municipal Hospital
, 156 Ill. 2d  511, 622 N.E.2d 788 (1993)), apparent agency is no longer an issue here.  The issue here is whether Sayeed and Blatt were MacNeal's 
actual
 agents.

MacNeal correctly notes that plaintiff has failed to cite any Illinois decision in which a hospital has been found vicariously liable for the negligence of an independent contractor - physician or nurse - under an implied agency theory.  Regardless, MacNeal acknowledges that the issue here is not whether a plaintiff may 
ever
 rely on circumstantial evidence to prove actual agency in such a context.  Rather, the issue here is whether
 plaintiff
, under the circumstances of the present case, adduced the requisite circumstantial evidence to establish that Sayeed and Blatt
 were the actual agents of MacNeal.  We conclude that she did not.

“The cardinal consideration for determining the existence of implied authority is whether the alleged agent retains the right to control the manner of doing the work.” 
Petrovich
,
 188 Ill. 2d at 42, 
719 N.E.2d at 770
, citing 
John Gabel Manufacturing Co. v. Murphy
, 390 Ill. 455, 461, 62 N.E.2d 401, 404 (1945).
  
Although the trial court determined that the fact that Dr. Sayeed and Nurse Blatt were in MacNeal's facilities and were wearing MacNeal identification badges constituted
 “a paucity of evidence”
 on the agency issue, the court determined that this circumstantial evidence was sufficient to create “a question of fact” as to actual agency.  We disagree.  As the 
Pedrick
 court acknowledged, “the presence of 
some
 evidence of a fact which, when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance.” (Emphasis in original.) 
Pedrick
, 37 Ill. 2d  at 504, 229 N.E.2d at 510.  A directed verdict should be granted where the assessment of the credibility of witnesses or the determination of conflicting evidence is not decisive to the outcome
 or
 w
here there is no evidence demonstrating a 
substantial
 factual dispute. 
Scardina v. Nam
,
 333 Ill. App. 3d  260,
 268-69, 775 N.E.2d 16, 24 (2002).

The uncontroverted evidence established that
 Sayeed and Blatt were employees of Windsor Anesthesia Associates, not the hospital.  
During her case in chief, plaintiff introduced evidence that both Dr. Sayeed and Nurse Blatt were employees of Windsor Anesthesia Associates.  Plaintiff called no witnesses from MacNeal to testify about the relationship between the hospital and either Dr. Sayeed or Nurse Blatt, nor did plaintiff introduce any evidence concerning the hospital's contract with their employer, Windsor Anesthesia Associates.
  During cross-examination of Dr. Sayeed, MacNeal established that he was not paid any wages by the hospital.

In light of this testimony, the paucity of circumstantial evidence supporting plaintiff's claim of actual agency - Dr. Sayeed's and Nurse Blatt's presence at MacNeal's facilities and their wearing of MacNeal identification badges -  lost its significance when viewed in the context of 
all
 the evidence.  Because t
here were no substantial factual disputes for the jury to resolve on the issue of agency - implied or express -
  MacNeal was entitled to a directed verdict on the actual agency issue.  The type of evidence necessary to sustain a claim of implied agency typically consists of facts from which a jury can infer “control.”  We hold that the paucity of circumstantial evidence of an actual agency relationship between the hospital and the anesthesia defendants 
- Dr. Sayeed's and Nurse Blatt's presence at MacNeal's facilities and their wearing of MacNeal identification badges -  
and any highly speculative inferences that the jury might have drawn from that evidence, were insufficient to have placed the actual agency issue before the jury.  Accordingly, the trial court should have granted MacNeal's motion for a directed verdict on the issue of actual agency.  The court also should have granted MacNeal's motion for judgment 
n.o.v.

CONCLUSION

Based on the foregoing reasons, we affirm 
that part of the judgment of the circuit court of
 Cook County denying the motions of defendants Yousuf F. Sayeed, M.D. and 
Janyce Blatt,
 C.R.N.A. for judgment 
n.o.v.
, a new trial, and remittitur.  We reverse, however, that part of the judgment 
denying defendant MacNeal Hospital's motion 
for a judgment 
n.o.v.
 on the issue of agency and enter judgment for MacNeal Hospital.

Affirmed in part; reversed in part.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concurring.

FOOTNOTES
1:
MacNeal, Yousuf Sayeed, M.D., and Janyce Blatt, C.R.N.A.
 are the only defendants involved in this appeal.

2:
A third count, pled under the theory of 
res ipsa loquitur
, was dismissed prior to trial and is not an issue in this appeal. 

3:
Pollitt died during the pendency of the action and Harris Trust & Savings Bank was substituted as his personal representative.