NOTICE
Decision filed 06/15/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0098

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LINDA S. KINDERNAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and | ) | Montgomery County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02-L-1 |
| | ) | |
| HILLSBORO AREA HOSPITAL, an Illinois Not- | ) | |
| for-Profit Corporation, | ) | |
| | ) | Honorable |
| Defendant-Appellant and | ) | William J. Becker, |
| Cross-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SPOMER delivered the opinion of the court:

The defendant, Hillsboro Area Hospital, appeals the order of the circuit court of Montgomery County that entered a judgment on a jury verdict in favor of the plaintiff, Linda S. Kindernay, for damages in the amount of $120,000 on her cause of action for negligence and awarded the plaintiff damages in the amount of $70 and attorney fees in the amount of $70 on her cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)). The plaintiff cross-appeals that portion of the judgment on the jury verdict which reduced the plaintiff's damages by 20% based on the jury's finding of 20% contributory negligence on the part of the plaintiff, and she also appeals the amount of attorney fees awarded by the circuit court under the Consumer Fraud Act.

The defendant included nine issues in the statement of issues in its brief. However, the argument contained in the defendant's brief does not correspond to the defendant's

1

statement of issues, and some issues do not appear to be supported in any section of the argument. Illinois Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)) mandates that an appellate litigant provide "citation of the authorities and the pages of the record relied on" in support of an argument on appeal. Moreover, Rule 341(e)(7) states, "Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 188 Ill. 2d R. 341(e)(7). We have also previously held that arguments inadequately presented on appeal are waived. *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 786 (1994). Accordingly, we have limited our discussion of the issues to those contained in the argument portion of the defendant's brief. The plaintiff raises two issues on cross-appeal. For the reasons set forth below, we affirm the judgment on the verdict on the plaintiff's cause of action for negligence, including the 20% reduction for the plaintiff's contributory negligence raised as an issue in the plaintiff's cross-appeal. Furthermore, we reverse the judgment on the plaintiff's cause of action under the Consumer Fraud Act, rendering the plaintiff's cross-appeal regarding the amount of attorney fees moot.

The facts necessary to our disposition of this appeal are as follows. On June 7, 2002, the plaintiff filed a complaint in the circuit court of Montgomery County, alleging that she suffered lost wages and emotional distress due to the defendant's failure to administer her drug test in accordance with the United States Department of Transportation (DOT) regulations regarding procedures for transportation workplace drug-and-alcohol testing (49 C.F.R. §40.1 *et seq.* (2000)). Specifically, the complaint alleged that the defendant, acting through its employee, failed to properly instruct the plaintiff to wash her hands prior to urination, failed to properly secure the collection restroom, and failed to place a bluing agent in the toilet bowl and tank prior to the collection of urine from the plaintiff. The complaint further alleged that these omissions proximately caused the results of her drug test to be falsely positive for cannabis, which resulted in her claimed lost wages and emotional-distress

2

damages.

After the disposition of a motion for a summary judgment on several counts of the complaint, two counts remained. Count I of the complaint alleged a breach of contract and count II alleged negligence. On the morning of the July 14, 2004, trial, the plaintiff filed a motion for leave to file, at a later date, a third amended complaint in order to replace count I (breach of contract) with a count alleging a cause of action under the Consumer Fraud Act. Over the defendant's objection, the circuit court granted the motion.

The negligence count was tried before a jury of 12. The plaintiff called James Schnarre, manager of the defendant's laboratory, as an adverse witness in her case in chief. Mr. Schnarre testified that the defendant holds itself out as a DOT drug-test collection site. He administered the plaintiff's DOT drug test on August 8, 1997. When he administered the plaintiff's drug test, he did not have a copy of the DOT regulations in effect at that time; a copy of those regulations was admitted into evidence as plaintiff's exhibit two. Instead, he was operating pursuant to the National Institute on Drug Abuse (NIDA) procedures supplied by SmithKline Laboratories for employment drug tests generally; a copy of those procedures was admitted into evidence as plaintiff's exhibit four.

Mr. Schnarre admitted that while the DOT regulations set forth in the plaintiff's exhibit two required the administrator of the test to instruct the subject to wash her hands prior to the collection, the NIDA guidelines did not contain that requirement. Mr. Schnarre admitted that he did not instruct the plaintiff to wash her hands prior to the collection and that this procedure is in place to prevent contamination on the subject's hands from causing a false-positive test result. Mr. Schnarre also admitted that the DOT regulations state that the instructions for DOT procedures must be available at the collection site for reference by the collector and the subject of the test and that he did not have them available. In addition, Mr. Schnarre did not place a bluing agent into the toilet as instructed by the DOT regulations,

3

because the NIDA guidelines did not contain that requirement.

Although the NIDA guidelines required Mr. Schnarre to enter the restroom prior to the plaintiff in order to shut the water supply off, it did not require him to examine the restroom to ensure there were no foreign materials present, as required by the DOT regulations. However, Mr. Schnarre testified that he was within sight of the collection restroom door at all times. Mr. Schnarre also testified that when the plaintiff contacted the defendant to obtain a repeat test after she learned of the positive test result, it was unable to comply with her request because she did not have a physician's order and hospital bylaws require a physician's order before a drug test can be given.

The plaintiff testified on her own behalf. She testified that she had taken at least five DOT drug tests prior to August of 1997 and that they had all been negative. In August of 1997, she arrived at the defendant's facility and registered at the front desk. She then went back to the laboratory and was greeted by Mr. Schnarre. Mr. Schnarre handed her two cups and told her to go ahead into the collection restroom. When the plaintiff went to enter the collection bathroom, she found the door locked. After a few moments, an unknown woman came out of the restroom. The plaintiff did not know the woman, had never seen her before, and at the time of the trial could not recall a description of the woman.

When the plaintiff walked in the bathroom after the unknown woman had exited, the plaintiff noticed a urine sample on the shelf. As they were passing each other, the plaintiff asked the lady if she was supposed to take the sample with her, and the woman said they had told her to leave it in the restroom. Mr. Schnarre did not accompany the plaintiff down the hallway to the restroom, and contrary to Mr. Schnarre's testimony, the plaintiff testified that Mr. Schnarre could not see the collection restroom directly from his desk. The plaintiff admitted that when she learned of the positive test result, she did not mention the unknown woman and that she did not mention her until she talked to an attorney in connection with her

4

hearing before the Illinois Secretary of State to reinstate her DOT license.

The plaintiff testified that, upon entering the restroom, she put her urine into the smaller cup and set it on the shelf. In contradiction to Mr. Schnarre's testimony, the plaintiff testified that the water supply to the bathroom was on, because she washed her hands. She then poured the urine from the smaller cup to the larger cup. She washed her hands a second time, picked up what she thought was her specimen, and then exited the restroom. She handed the specimen to Mr. Schnarre, who placed the specimen into a bag. She then initialed some papers and stickers, which Mr. Schnarre placed onto the bag. She then left the defendant's facility and went back to work.

The plaintiff testified that once she learned that her drug test result was positive for cannabis, she went to talk to the superintendent of schools. After speaking to him, she felt a little better about what was going on and felt that things would work out. She then went to her physician's office to reschedule another drug test but was informed that her physician was on vacation. It was approximately two weeks later before she was able to reschedule for a new drug test. Before the results of her second test came back, she learned that her driving privileges were to be suspended by the Secretary of State. When the second test results came back, they were negative. She retained an attorney to represent her at a hearing regarding reinstatement, in which she ultimately prevailed. However, she was unable to drive during the entire 1997-1998 school year. She testified that had she driven that year, her income from driving would have been approximately $10,000.

The plaintiff then testified regarding the emotional injuries she claims resulted from the positive drug test result. After she lost her driving privileges, she was having a very difficult time and was treated for depression. She was prescribed an antidepressant, a medicine for stomach upset, and a sleeping pill. After she moved with her husband to Grayville at the end of 1997, her symptoms worsened. She believed that people knew about

5

her positive test result, and she would not leave the house. She went from not being able to sleep to sleeping 18 hours a day. She quit participating in all the activities in which she used to participate.

Lastly, the plaintiff testified that in January of 2000 she was having thoughts of committing suicide. She left a note for her husband and went driving, ending up at Hillsboro Lake. She does not remember what happened after that until her friend, Bev McCoy, arrived to assist her. She was hospitalized for her depression later that day and was prescribed a different antidepressant medication. She testified that she was feeling better since beginning this medication.

The plaintiff called Beverly McCoy, a 30-year acquaintance of the plaintiff, to the stand to testify about the effect the positive test result had on the plaintiff. Ms. McCoy testified that prior to August of 1997 the plaintiff worked with kids through the sports association in Hillsboro. She ran the city swimming pool and worked in city hall. She was very outgoing and loved to be around people. In contrast, after August of 1997, when the plaintiff learned of the positive drug test result and lost her job, she avoided people and lost a lot of weight. Ms. McCoy witnessed her crying almost every day. After the plaintiff moved from Hillsboro to Grayville in 1998, Ms. McCoy talked to her on the phone a lot. Ms. McCoy described an incident in 2000 in which the plaintiff called her on the phone, resulting in Ms. McCoy picking the plaintiff up and bringing her back to Ms. McCoy's home. The plaintiff was so distraught that Ms. McCoy called a friend from the police department to assist her to the Litchfield Hospital. From there the plaintiff was hospitalized in Springfield for depression.

Following the testimony of Beverly McCoy, the plaintiff's husband, David Kindernay, testified. Mr. Kindernay had been married to the plaintiff for 30 years. Mr. Kindernay also testified that prior to May of 1997 the plaintiff was very outgoing and did a lot of community

6

service with children. The plaintiff had driven a school bus for five or six years. After her DOT drug test was positive for cannabis, she did not want to leave the house. Her DOT driving privileges were suspended for a few months, but she never went back. Mr. Kindernay testified that one day in 2000 he came home from work to find a note stating that the plaintiff had gone away to think and be by herself and would be back later. He then received a phone call and learned that she was in the hospital for depression and contemplation of suicide. She was hospitalized for approximately one week. Mr. Kindernay testified that, at the time of the trial, the plaintiff was doing better on her medication for depression and had gained some weight back.

Dr. Edwin Wolfgram testified that he practices psychiatry in St. Louis, Missouri, and first evaluated the plaintiff in March of 1999. Dr. Wolfgram diagnosed the plaintiff with severe major depression, single episode, and posttraumatic stress disorder. Dr. Wolfgram attributed this condition, with a reasonable degree of medical certainty, to the suspension of the plaintiff's driving privileges after the positive drug test result. He prescribed an antidepressant and suggested the plaintiff return for psychotherapy. The plaintiff returned a total of 15 times for psychotherapy, for an average of 3 times a year and a cost of $2,692.50, which Dr. Wolfgram testified is fair and reasonable based on customary charges.

With regard to future medical care, Dr. Wolfgram testified that future physician and psychiatrist visits for the plaintiff's depression would amount to approximately $800 per year and that the cost of the plaintiff's medication would be approximately $1,800 per year. Dr. Wolfgram also testified that there is a risk of recurrent hospitalizations, which average a thousand dollars a day and are approximately six weeks in duration. Dr. Wolfgram testified that these hospitalizations occur, on average, approximately two to three times in a lifetime. However, on cross-examination, Dr. Wolfgram testified that he did not have an opinion within a reasonable degree of medical certainty whether it was more likely than not that the

7

plaintiff would require future hospitalization. A life expectancy table showing the plaintiff's remaining life expectancy to be 32.9 years was admitted into evidence.

The defendant called Mr. Schnarre as its only witness in its case in chief. Mr. Schnarre testified that he did inspect the collection restroom prior to the plaintiff entering. After the plaintiff registered and provided Mr. Schnarre with her identifying information, Mr. Schnarre removed the seal from the collection specimen kit and handed the kit to the plaintiff. According to Mr. Schnarre, he observed the plaintiff enter the collection restroom and did not see anybody exit. He testified that while the plaintiff was in the collection restroom, he was in a position to observe the door. He testified that after the plaintiff exited, she washed her hands in the room next to the laboratory. He again testified that he had shut the water off to the collection restroom. After checking the temperature of the sample, having the plaintiff initial the tamper-proof chain-of-custody strips, and securing the collection vials inside the specimen bag, the plaintiff left. Mr. Schnarre then refrigerated the samples until the courier arrived to transport them to the SmithKline laboratory for testing. On cross-examination, Mr. Schnarre admitted that it is possible that other urine specimens had been collected in that restroom and that he did not know how many other specimens had been collected on that morning.

The defendant moved for a directed verdict, both at the close of the plaintiff's case in chief and at the close of the evidence. The circuit court denied the motions. The jury returned a verdict in favor of the plaintiff on the negligence count. The jury awarded the plaintiff $30,000 for the past and future loss of a normal life, $25,000 for past and future emotional distress, $85,000 for past and future medical expenses, and $10,000 for lost wages, for a total of $150,000. The jury found 20% contributory negligence on the part of the plaintiff, which resulted in a verdict in the favor of the plaintiff in the amount of $120,000.

On July 21, 2004, the plaintiff filed her third amended complaint, which only included

8

amended count I under the Consumer Fraud Act and omitted count II for negligence, which had already been tried. Amended count I prayed for damages in the amount of the cost of the drug test, as well as attorney fees and costs. On August 31, 2004, the defendant filed posttrial motions for a judgment notwithstanding the verdict, alternatively for a new trial, and alternatively for a remittitur. On the same date, the defendant also filed a motion to strike and to dismiss count I of the third amended complaint for a failure to state a cause of action, as well as a motion for a judgment on the negligence claim, based on the fact that when the plaintiff filed the third amended complaint, she omitted the negligence count, indicating that the plaintiff was withdrawing her cause of action on that count, rendering the verdict a nullity.

On September 29, 2004, the circuit court heard argument from both parties on all the pending motions. The circuit court denied the defendant's motion to strike and to dismiss count I of the third amended complaint and ordered the defendant to answer that count. The circuit court also set a briefing schedule for the parties' positions on whether the evidence presented at the July 14, 2004, trial proved that the defendant violated the Consumer Fraud Act. The circuit court took all the other motions under advisement. On October 12, 2004, the defendant filed an answer and affirmative defenses to count I of the third amended complaint. On November 19, 2004, the plaintiff submitted her brief in support of count I and in support of her prayer for reasonable attorney fees and costs.

On December 16, 2004, the circuit court entered a detailed order on all the pending matters. With regard to the plaintiff's claim under the Consumer Fraud Act, the court ruled that the defendant held itself out to be a facility that could conduct DOT drug tests under the appropriate federal regulations and that the employee in charge of administering the tests was not familiar with the regulations and did not perform the plaintiff's test according to those standards. The circuit court entered a judgment on that count in the amount of $70 for the

9

cost of the test and, finding that the plaintiff had filed the amended count on the eve of the trial for the purpose of collecting attorney fees, awarded only $70 in attorney fees. The circuit court denied the defendant's motion for a judgment on the negligence claim based on its omission from the third amended complaint filed on July 21, 2004. The court also denied the defendant's posttrial motions for a judgment notwithstanding the verdict or for a new trial or for a remittitur. The court entered a judgment in favor of the plaintiff and against the defendant in the amount of $120,070 plus costs and a judgment against the defendant in the amount of $70 for attorney fees.

On January 11, 2005, the defendant filed a motion for a reconsideration of the circuit court's judgment on the count under the Consumer Fraud Act. The motion was denied by the circuit court on January 25, 2005. The defendant filed a notice of appeal, and the plaintiff filed a notice of cross-appeal. Additional facts necessary for our disposition of this appeal will appear where necessary throughout this order.

The defendant's first argument on appeal is that the circuit court erred in denying the defendant's motion for a directed verdict, motion for a judgment notwithstanding the verdict, and motion for a new trial, on the grounds that the plaintiff failed to prove that any of the defendant's alleged negligence proximately caused the plaintiff's claimed damages. The defendant's argument in this regard is twofold. First, the defendant argues that there was insufficient evidence for the jury to find that any possible confusion of the plaintiff's urine sample with that of the unidentified woman was causally related to the positive test result for cannabis. Second, the defendant argues that the positive test result for cannabis was not the cause of the plaintiff's emotional injuries. Rather, the defendant argues that the plaintiff's emotional injuries are a result of her perception of changed community attitudes toward her due to the publication of the test result. The defendant contends that because the defendant did not publish the test result to any third party, it could not have caused her claimed

10

damages.

We first address the standard of review. We apply the *de novo* standard of review to the trial court's denial of a motion for a directed verdict, as well as its denial of a motion for a judgment notwithstanding the verdict. *Buckholtz v. MacNeal Hospital*, 337 Ill. App. 3d 163, 167 (2003). Verdicts ought to be directed and judgments notwithstanding the verdict entered only in those cases in which all the evidence, when viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. *Buckholtz*, 337 Ill. App. 3d at 167 (relying on *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). In making this assessment, a reviewing court must not substitute its judgment for the jury's, nor may a reviewing court reweigh the evidence or determine the credibility of witnesses. *Buckholtz*, 337 Ill. App. 3d at 167 (relying on *Donaldson v. Central Illinois Public Service Co.*, 199 Ill. 2d 63, 89 (2002)).

The standard to be used in determining whether to grant a new trial is whether the jury's verdict was against the manifest weight of the evidence. *Buckholtz*, 337 Ill. App. 3d at 168 (citing *Maple v. Gustafson*, 151 Ill. 2d 445, 455 (1992)). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. *Buckholtz*, 337 Ill. App. 3d at 168 (relying on *Maple*, 151 Ill. 2d at 454). This court will not reverse a trial court's ruling on a motion for a new trial except in those instances where it is affirmatively shown that the trial court clearly abused its discretion. *Buckholtz*, 337 Ill. App. 3d at 168 (citing *Maple*, 151 Ill. 2d at 455).

Proximate cause exists where an injury is the natural and probable result of a negligent act or omission and is of such a character that an ordinarily prudent person ought to have foreseen it as likely to occur as a result of the negligence. *Leone v. City of Chicago*, 235 Ill. App. 3d 595, 603 (1992). Furthermore, proximate cause need not be the only, last, or nearest

11

cause; it is sufficient if it occurs with some other cause, acting at the same time, that in combination with it causes injury. *Leone*, 235 Ill. App. 3d at 603. Two tests are generally applied in determining the issue of proximate cause. *Morton v. F.B.D. Enterprises*, 141 Ill. App. 3d 553, 559 (1986). Under the "substantial factor" test, the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. *Morton*, 141 Ill. App. 3d at 559. Under the second test, commonly called the "but for" rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. *Morton*, 141 Ill. App. 3d at 559. The plaintiff bears the burden of proving proximate cause by a preponderance of the evidence.

Here, we cannot say that the jury's determination that the defendant's negligence caused the plaintiff's false-positive test result and emotional damages was against the manifest weight of the evidence or that all the evidence, when viewed in the light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand. Based on the testimony of the plaintiff, a reasonable jury could find that it was more likely than not that the test result was a false positive, in that the plaintiff had not used cannabis. Furthermore, a reasonable jury could have found the plaintiff's testimony to be more credible than Mr. Schnarre's testimony with regard to the existence of the unidentified woman and Mr. Schnarre's failure to secure the collection restroom. Accordingly, there was sufficient evidence in the record for a reasonable jury to infer that, due to Mr. Schnarre's failure to secure the collection restroom, the urine sample of an unidentified woman was left in the collection restroom and that the plaintiff inadvertently picked up the unidentified woman's sample after washing her hands and tendered it to Mr. Schnarre for analysis. Finally, because the test result came back positive, a reasonable jury could infer that it is more likely than not that the unidentified woman had cannabis in her urine. Based on inferences from the evidence, a reasonable jury could find that Mr.

12

Schnarre's failure to secure the collection restroom met the foreseeability, substantial-factor, and but-for tests for proximate cause regarding the false-positive test result.

Although it was established that the defendant did not publish the false-positive test result to any third party, it does not follow that Mr. Schnarre's negligence was not the proximate cause of the plaintiff's emotional injuries. The publication of the false-positive test result was a natural and probable consequence of Mr. Schnarre's failure to secure the collection restroom. It was foreseeable that any false-positive test result that occurred as a result of the failure to secure the restroom would be published to a third party and that the publication would cause the plaintiff emotional harm. A reasonable jury could find that, more likely than not, a false-positive test result would not have been published to a third party absent the defendant's negligence in securing the collection restroom. The trial court did not err in denying the defendant's motions for a directed verdict and a judgment notwithstanding the verdict, nor did it abuse its discretion in denying the defendant's motion for a new trial on the grounds that the plaintiff failed to prove proximate cause.

The defendant's second argument on appeal is that this action constitutes a professional negligence action and that the circuit court erred in denying its posttrial motions on the grounds that the plaintiff failed to offer expert testimony regarding the applicable standard of care. Generally, expert testimony is needed to support a charge of malpractice because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of a physician. *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978). However, present-day hospitals, as this case demonstrates, do far more than furnish facilities for medical treatment (*Greenberg v. Michael Reese Hospital*, 83 Ill. 2d 282, 292-93 (1980)). A modern hospital such as the defendant is an amalgam of many individuals, not all of whom are licensed medical practitioners. *Greenberg*, 83 Ill. 2d at 293. Accordingly, due to the diversity

13

inherent in hospital administration, a broad range of evidence is available to establish the applicable standard of care. *Greenberg*, 83 Ill. 2d at 293.

If the standard of care applicable to a hospital may be established on the basis of evidence short of expert testimony, the plaintiff will be permitted to proceed with his suit on a theory of ordinary negligence. *Kolanowski v. Illinois Valley Community Hospital*, 188 Ill. App. 3d 821, 823-24 (1989). We find this to be such a case. This is not a case where jurors not skilled in the practice of medicine would find it difficult without the help of expert testimony to determine whether a health care professional lacked the necessary scientific skill. The DOT regulations plainly establish the procedures to be followed by the defendant in administering the plaintiff's drug test. No further evidence of the appropriate standard of care was necessary. Accordingly, it was not error, nor an abuse of discretion, for the circuit court to deny the defendant's posttrial motions on the grounds that the plaintiff failed to present expert testimony regarding the applicable standard of care.

The defendant's third argument on appeal is that the circuit court erred in denying the defendant's posttrial motion for a remittitur on the ground that the plaintiff failed to produce competent evidence of certain items of damages. In particular, the defendant contends that the $85,000 awarded by the jury for past and future medical expenses is without support in the record. The standard of review we apply in deciding whether the trial court erred in denying the defendant's motion for a remittitur is whether the trial court abused its discretion. *Buckholtz*, 337 Ill. App. 3d at 168. The determination of the amount of damages is a function reserved for the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court. *Buckholtz*, 337 Ill. App. 3d at 171 (citing *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997)). A jury's award will not be subject to a remittitur if it falls within the flexible range of conclusions reasonably supported by the facts. *Buckholtz*, 337 Ill. App. 3d at 171 (citing *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432,

14

470 (1992)). A verdict will not be set aside by a court unless it is so excessive that it indicates that the jury was moved by passion or prejudice or unless it exceeds the necessarily flexible limits of fair and reasonable compensation or is so large that it shocks the judicial conscience. *Buckholtz*, 337 Ill. App. 3d at 171.

Employing the foregoing principles, we cannot say that the circuit court abused its discretion in denying the defendant's motion for a remittitur on the jury's award of $85,000 for past and future medical expenses. Dr. Wolfgram diagnosed the plaintiff with severe major depression, single episode, and posttraumatic stress disorder. Dr. Wolfgram attributed this condition, with a reasonable degree of medical certainty, to the suspension of the plaintiff's driving privileges after the false-positive drug test result. He prescribed an antidepressant and suggested that the plaintiff return for psychotherapy. The plaintiff returned a total of 15 times for psychotherapy, for an average of 3 times a year and a cost of $2,692.50, which the doctor testified is fair and reasonable based on customary charges.

With regard to future medical care, Dr. Wolfgram testified that future physician and psychiatrist visits for the plaintiff's depression would amount to approximately $800 per year and that the plaintiff's medication would cost approximately $1,800 per year. Dr. Wolfgram also testified that there is a risk of recurrent hospitalizations, which average a thousand dollars a day and are approximately six weeks in duration. Dr. Wolfgram testified that these hospitalizations occur, on average, approximately two to three times in a lifetime. However, on cross-examination, Dr. Wolfgram testified that he did not have an opinion within a reasonable degree of medical certainty whether it was more likely than not that the plaintiff would require future hospitalization. A life expectancy table showing the plaintiff's remaining life expectancy to be 32.9 years was admitted into evidence.

Considering this evidence, it is apparent that a reasonable jury could find, even excluding the possibility of future hospitalizations, that the plaintiff's past and future medical

15

expenses amount to $85,000. Multiplying the future prescription costs and psychiatrist visits by the plaintiff's remaining life expectancy of 32.9 years, the total is $85,540. Accordingly, $85,000 falls within the flexible range of conclusions supported by the facts, and the circuit court did not abuse its discretion in denying the defendant's motion for a remittitur.

In the defendant's fourth argument on appeal, it contends that the fact that following the trial the plaintiff filed a third amended complaint that omitted the plaintiff's negligence claim operated as a withdrawal of the negligence claim and rendered the verdict a nullity. The defendant cites *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150 (1983) (*Foxcroft*), and its progeny in support of its position. In *Foxcroft*, the Illinois Supreme Court held that a party who files an amended pleading waives any objection to the trial court's ruling on former complaints and that where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. *Foxcroft*, 96 Ill. 2d at 153-54. As the *Foxcroft* court explained, the reason for this rule is that it ensures that defendants are not disadvantaged by permitting a plaintiff to proceed to a trial or appellate review on different issues contained in separate complaints. *Foxcroft*, 96 Ill. 2d at 154.

We decline to apply the *Foxcroft* rule to this case. Here, the original complaint consisted of a count for negligence and one for a breach of contract. On the day of the trial, the plaintiff obtained leave to amend the complaint in order to replace the breach-of-contract count with one alleging a cause of action under the Consumer Fraud Act. It is clear from the record that both parties understood that the negligence count was proceeding to a trial and that the defendant was to answer or otherwise plead to the Consumer Fraud Act count following the conclusion of the trial on the negligence count. While it might have been better pleading form for the plaintiff to include the negligence count, which had already been tried, when she filed the third amended complaint, *Foxcroft* does not render the verdict a nullity for

16

her failure to do so.

The defendant's fifth argument on appeal is that the circuit court erred in denying the defendant's motion for a new trial on the grounds of improper jury instructions, improper argument by counsel, and contradictory testimony presented at the trial. With regard to jury instructions, the defendant argues that the circuit court erred in permitting the jury to consider whether the defendant was negligent, without any reference to expert testimony concerning the applicable standard of care. As discussed above, the circuit court did not err in allowing the plaintiff to go forward on a theory of ordinary negligence, proving the standard of care by the DOT regulations. Furthermore, the defendant points to no specific jury instructions that it contends should or should not have been given, and it fails to cite any authority in support of its contentions. Accordingly, we decline to further address the defendant's argument regarding improper jury instructions. See *Fultz v. Peart*, 144 Ill. App. 3d 364, 380 (1986).

The defendant argues that in addition to its claim of improper jury instructions, the defendant is entitled to a new trial based on two unwarranted comments by the plaintiff's counsel. First, the defendant points to counsel's stated disbelief concerning the defendant's inability to produce a list of persons providing urine samples for collection on the date in question, which was repeated by counsel after the circuit court sustained an objection to the comment. Second, the defendant points to the plaintiff's counsel's request that the jury enter "a large verdict so everybody can be chattering about it and maybe then somebody might motivate a change over there." The defendant's objection to this comment was overruled. Again, the defendant fails to support its argument with citation to authority. Our review of the record concerning each of these instances fails to reveal any grounds for a reversal. See *Fultz*, 144 Ill. App. 3d at 380. Regarding the objection that was overruled, the ruling was well within the discretion of the circuit court, and regarding the objection that was sustained, the circuit court's ruling rendered harmless any resulting prejudice. See *Fultz*, 144 Ill. App.

3d at 380. The circuit court is in a superior position to observe the impact of the alleged misconduct on the jury. See *Fultz*, 144 Ill. App. 3d at 380. We find no abuse of discretion and will not disturb the rulings of the circuit court.

The defendant points to a laundry list of testimony by the plaintiff that it contends is contradictory and deprived the defendant of a fair trial. This argument also lacks any citation to authority. The plaintiff correctly points out that inconsistencies in testimony are matters that affect only the weight of the evidence, not its admissibility, and are properly reserved for resolution by the jury. *Hahn v. Union Pacific R.R. Co.*, 352 Ill. App. 3d 922, 934 (2004). It was the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony. *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992).

Before addressing the issues on appeal regarding the plaintiff's claim under the Consumer Fraud Act, we turn to the plaintiff's argument on cross-appeal that the jury's finding of 20% contributory negligence on the part of the plaintiff was against the manifest weight of the evidence. As explained above, a verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary, and not based upon any of the evidence. *Maple*, 151 Ill. 2d at 454. The plaintiff argues that no reasonable jury could find contributory negligence on her part because she had no duty to anticipate the defendant's negligence in failing to secure the collection restroom. We disagree. The plaintiff testified that when she entered the collection restroom, she saw a urine specimen on the shelf. Just as a reasonable jury could infer that the defendant's failure to secure the collection restroom contributed to cause the plaintiff to inadvertently switch her sample with the existing sample, a reasonable jury could infer that the plaintiff's inattentiveness was a contributing cause as well. We will not disturb the jury's finding of 20% contributory negligence.

We now turn to the issues regarding the plaintiff's claim under the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 2004)). The defendant argues that the circuit court erred in denying the defendant's motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2004)) because the plaintiff failed to properly plead a cause of action under the statute. We review *de novo* the circuit court's ruling on a section 2-615 motion to dismiss. *McGuire v. Ameritech Cellular Corp.*, 314 Ill. App. 3d 83, 85 (2000). The elements of a cause of action under the Consumer Fraud Act are (1) the defendant committed a deceptive act or practice, (2) the defendant did so with the intent that the plaintiff rely on the deception, and (3) the deception occurred in the course of trade or commerce. *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 311-12 (2000) (citing *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996)). A consumer fraud violation must be pled with the same particularity and specificity required for common law fraud claims. *McGuire*, 314 Ill. App. 3d at 86 (citing *Connick*, 174 Ill. 2d at 501). It is also settled that the deceptive act or practice which is actionable under the Consumer Fraud Act involves more than the mere fact that a defendant promised something and then failed to do it, since that type of "misrepresentation" occurs every time a defendant breaches a contract. *Zankle*, 311 Ill. App. 3d at 312.

Here, count I of the plaintiff's third amended complaint alleges that the plaintiff contracted with the defendant to run certain tests necessary for her employment, that the defendant breached its agreement with the plaintiff by failing to follow the proper guidelines for administering the test, and that the failure to follow the guidelines constituted consumer fraud. These allegations are insufficient as a matter of law. The complaint contains no allegation that the defendant made any misrepresentation with the intent that the plaintiff rely on the misrepresentation. The allegations contained in the third amended complaint amount to nothing more than an allegation that the defendant promised to administer the DOT drug

test and failed to do it properly. Accordingly, the circuit court erred in denying the defendant's motion to dismiss on the grounds that the plaintiff failed to state a cause of action sufficient to entitle her to relief under the Consumer Fraud Act.

Because we find merit to the defendant's argument that the plaintiff failed to plead a cause of action under the Consumer Fraud Act, we do not need to address the defendant's issue on appeal regarding whether the circuit court erred in allowing the amendment to the complaint at the time of the trial. Nor do we need to address the plaintiff's issue on cross-appeal that the circuit court erred in its determination of attorney fees.

For the reasons stated above, we affirm the judgment on the verdict on the plaintiff's cause of action for negligence, including the 20% reduction for the plaintiff's contributory negligence. Furthermore, we reverse the judgment in favor of the plaintiff under the Consumer Fraud Act, and we reverse the judgment for the plaintiff's attorney fees, rendering the plaintiff's cross-appeal regarding the amount of attorney fees moot.

Affirmed in part and reversed in part.

HOPKINS and DONOVAN, JJ., concur.

NO. 5-05-0098

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LINDA S. KINDERNAY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee and | ) | Montgomery County. |
| Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 02-L-1 |
| | ) | |
| HILLSBORO AREA HOSPITAL, an Illinois Not- | ) | |
| for-Profit Corporation, | ) | |
| | ) | Honorable |
| Defendant-Appellant and | ) | William J. Becker, |
| Cross-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed**: June 15, 2006

_____

**Justices**: Honorable Stephen L. Spomer, P.J.

Honorable Terrence J. Hopkins, J., and
Honorable James K. Donovan, J.,
Concur

_____

**Attorney**
**for**
**Appellant**

James E. Peckert, Kehart, Peckert & Booth, 132 South Water Street, Suite 200,
P.O. Box 860, Decatur, IL 62525-0860

_____

**Attorneys**
**for**
**Appellee**

Bob L. Perica, Hoefert and Perica, P.C., 1600 Washington Ave., Alton, IL 62002;
Gail G. Renshaw, The Lakin Law Firm, 300 Evans Ave., P.O. Box 229, Wood
River, IL 62095-0229

_____