NOTICE
Decision filed 04/28/15. The
text of this decision may be
changed or corrected prior to
the filing of a Peti ion for
Rehearing or the disposition of
the same.

2015 IL App (5th) 140168

NO. 5-14-0168

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| GERALD DUNNING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 08-L-2 |
| | ) | |
| DYNEGY MIDWEST GENERATION, INC., a | ) | |
| Corporation, and AVI INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants and Third-Party Plaintiffs-Appellants | ) | |
| | ) | Honorable |
| (Power Maintenance Constructors, Inc., | ) | Andrew J. Gleeson, |
| Third-Party Defendant-Appellee). | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Stewart and Schwarm concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Gerald Dunning, was crushed between a steel I-beam support and a

portion of a 28,500-pound water pump being transported on a cart pushed by a forklift.

Defendant Dynegy Midwest Generation, Inc. (DMG), owned the water pump, and the

cart transporting the pump was pushed by a forklift owned and operated by DMG. The

cart was designed and maintained by defendant AVI International, Inc. (AVI). Plaintiff

was employed as a pipefitter by third-party defendant Power Maintenance Constructors,

1

Inc. (PMC), which was contracted to provide the labor services for the project. Plaintiff brought separate claims against defendants DMG and AVI for injuries sustained in the incident, and the trial court found in favor of plaintiff. Defendants timely appealed. We affirm.

¶ 2                              BACKGROUND

¶ 3    Prior to October 8, 2007, DMG contracted with fellow defendant, AVI, and third-party defendant, PMC, to perform tasks at its Baldwin Power Plant. One of the assigned tasks involved removing a circulating water pump from its casing and out of the power plant.

¶ 4    DMG was in charge of the power plant at the time in question. AVI was contracted to supervise the removal, transfer, loading, and transportation of circulating water pumps from DMG's power plant to AVI's facility in Connecticut for repair and maintenance. AVI also provided a cart that was designed for the purpose of transporting the water pumps. AVI's cart was designed and manufactured by AVI's president, Clifford Burrell, and was designed so that one person could push the cart across a flat concrete floor with a load of up to 40,000 pounds. PMC was contracted to provide the labor for the project, which was performed by plumbers and pipefitters. Plaintiff was employed by PMC as a union pipefitter for the project.

¶ 5    The events surrounding plaintiff's accident are as follows. On October 8, 2007, plaintiff was assisting in the removal of a 28,500-pound water pump at DMG's Baldwin Power Plant. DMG's water pump was lowered from its position and placed onto AVI's cart by PMC employees. Scott Docimo, AVI's only employee on-site at the time of the

2

incident, watched as PMC employees rigged the pump to AVI's cart and a forklift owned and operated by DMG. Docimo recognized that the PMC employees had improperly rigged the pump and cart to DMG's forklift, but did not say anything.

¶ 6 As the forklift began to slowly push the cart forward across a flat concrete floor, it began to veer off its intended path. The wheels on AVI's cart were going in different directions, and the cart was veering from side to side. In an attempt to keep the cart moving straight, PMC employees used their hands to guide the cart. As the PMC employees were pushing on the sides of the cart and pump to keep it moving straight, plaintiff was crushed between a portion of the pump and a steel I-beam support, sustaining serious injuries.

¶ 7 On January 4, 2008, plaintiff brought suit against DMG alleging negligence pursuant to section 414 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 414 (1965)). Plaintiff alleged that while he was in the course of his employment as a pipefitter for PMC at DMG's power plant, he was crushed into a steel post by a forklift owned and operated by DMG.

¶ 8 On October 1, 2008, plaintiff filed a first amended complaint adding AVI as a defendant, asserting a single count of negligence against AVI. Plaintiff alleged AVI negligently instructed rigging of the pump, failed to provide training and instruction in the safe operation of forklifts, and failed to inspect the area to ensure safe forklift operation. AVI filed an answer denying all material allegations of negligence and filed a third-party complaint against PMC alleging PMC negligently failed to maintain a lookout for dangers posed to plaintiff in the area it instructed plaintiff to work, failed to inspect

plaintiff's surroundings, failed to notify or warn plaintiff of potential dangers, failed to instruct and train plaintiff in his work, and failed to coordinate plaintiff's work with other trades and entities present.

¶ 9    Plaintiff filed a second amended complaint on November 4, 2013, adding a strict product liability count against AVI alleging AVI's cart was defective at the time of the accident.  On November 13, 2013, AVI filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) contesting the legal and factual sufficiency of plaintiff's complaint, a motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2012)) asserting statute of limitation and repose defenses, and a motion to continue trial.  The trial court denied all three motions, and the matter proceeded to trial on November 18, 2013.

¶ 10   Several witnesses testified for plaintiff and defendants at trial.  At the close of plaintiff's evidence, DMG moved for a directed verdict asserting plaintiff failed to show DMG owed a duty of care to plaintiff or that it was negligent.  The trial court denied DMG's motion.  Also at the close of plaintiff's evidence, the trial court directed a verdict against AVI on the counts of negligence and strict product liability.  The trial court established that as a matter of law, AVI's cart was defective and a proximate cause of plaintiff's injuries.

¶ 11   On November 22, 2013, the jury returned a verdict finding plaintiff comparatively negligent, finding against DMG and AVI, and finding against PMC on the third-party claims.  The following percentages of fault were assessed: plaintiff 6%, AVI 37%, DMG 47%, and PMC 10%.  On December 18, 2013, the trial court entered judgment on the

verdict rendered against DMG, AVI, and PMC. DMG and AVI timely filed posttrial motions, each moving for a judgment notwithstanding the verdict or in the alternative for a new trial, and AVI also moving to vacate the order of judgment and set aside the directed verdict entered in favor of plaintiff and against AVI. These posttrial motions were denied. Defendants DMG and AVI timely filed notices of appeal.

¶ 12                                    ANALYSIS

¶ 13    There are numerous issues raised by defendants on appeal. We first address the issues raised by DMG and then address the issues raised by AVI.

¶ 14                                    I. DMG

¶ 15    DMG alleges the trial court erred in denying its motion for a directed verdict, judgment notwithstanding the verdict, and motion for a new trial on the grounds that plaintiff failed to show DMG owed plaintiff a duty of care and failed to prove DMG's alleged negligence proximately caused plaintiff's injuries. DMG contends the evidence at the close of plaintiff's case overwhelmingly favored DMG.

¶ 16    A trial court's denial of a motion for a directed verdict or a judgment notwithstanding the verdict is reviewed *de novo*. *Ford v. Grizzle*, 398 Ill. App. 3d 639, 650, 924 N.E.2d 531, 542 (2010). A directed verdict or judgment notwithstanding the verdict is proper where all the evidence, when viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. *Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542. In ruling for a directed verdict or judgment notwithstanding the verdict, the court does not weigh the evidence and is not concerned with the credibility of the witnesses.

5

*Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542. The "court may only consider the evidence, and any rational inferences therefrom, in the light most favorable to the nonmoving party." *Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542.

¶ 17 Further, a judgment notwithstanding the verdict may not be granted merely because the court determines a verdict is against the manifest weight of the evidence. *Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542. A trial court has no right to enter a judgment notwithstanding the verdict if there is any evidence showing a substantial factual dispute or where the assessment of the witnesses' credibility or the determination regarding conflicting evidence is decisive to the outcome of the trial. *Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542-43.

¶ 18 Alternatively, on a motion for a new trial, the court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Ford*, 398 Ill. App. 3d at 651, 924 N.E.2d at 543. Hence, the standard to be used in determining whether to grant a new trial is whether the jury's verdict was against the manifest weight of the evidence. *Kindernay v. Hillsboro Area Hospital*, 366 Ill. App. 3d 559, 569, 851 N.E.2d 866, 875 (2006).

¶ 19 A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary, and not based upon any of the evidence. *Kindernay*, 366 Ill. App. 3d at 569, 851 N.E.2d at 875. A trial court's ruling on a motion for a new trial will not be reversed except in instances where it is affirmatively shown that the trial court clearly abused its discretion, as the trial judge had the benefit of observing the witnesses firsthand at trial. *Maple v. Gustafson*,

151 Ill. 2d 445, 455-56, 603 N.E.2d 508, 513 (1992). In determining whether the trial court abused its discretion, we must consider whether the verdict was supported by the evidence and whether the losing party was denied a fair trial. *Ford*, 398 Ill. App. 3d at 651, 924 N.E.2d at 543.

¶ 20 At the close of plaintiff's case, DMG moved for a directed verdict asserting it was not negligent because (1) plaintiff failed to show defendant owed plaintiff a duty and (2) plaintiff failed to establish DMG was a proximate cause of plaintiff's injuries. After the trial court denied DMG's motion for a directed verdict, DMG filed a posttrial motion for a judgment notwithstanding the verdict or in the alternative for a new trial, which the trial court denied. For the following reasons, we find the trial court did not err in denying DMG's motion for a directed verdict and judgment notwithstanding the verdict or DMG's motion for a new trial.

¶ 21 Before we begin our analysis, it should be noted that the existence of a duty is a question of law to be determined by the court, and questions concerning a breach of that duty and proximate cause of the injury are questions reserved for the trier of fact. *Jones v. Chicago & Northwestern Transportation Co.*, 206 Ill. App. 3d 136, 139, 563 N.E.2d 1120, 1122 (1990).

¶ 22                                         A. Duty of Care

¶ 23 Whether a duty exists is a question of law for the court to decide. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 227, 665 N.E.2d 1260, 1267 (1996). In resolving whether a duty exists, a court must determine whether there is a relationship between the parties requiring that a legal obligation be imposed upon one party for the

7

benefit of the other.  *Rhodes*, 172 Ill. 2d at 227, 665 N.E.2d at 1267.

¶ 24     The duty inquiry involves four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant.  *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 226, 938 N.E.2d 440, 447 (2010).

¶ 25     As a general rule, one who employs an independent contractor is not liable for the acts or omissions of the latter.  *Rangel v. Brookhaven Constructors, Inc.*, 307 Ill. App. 3d 835, 838, 719 N.E.2d 174, 176 (1999).  However, section 414 of the Restatement (Second) of Torts provides an exception to the general rule:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."  Restatement (Second) of Torts § 414 (1965).

*Gregory v. Beazer East*, 384 Ill. App. 3d 178, 186, 892 N.E.2d 563, 572-73 (2008).

¶ 26     Thus, whether a duty exists under section 414 turns on whether the defendant controls the work in such a manner that he should be held liable.  *Martens v. MCL Construction Corp.*, 347 Ill. App. 3d 303, 315, 807 N.E.2d 480, 489 (2004).  The comments accompanying section 414 discuss a continuum of control which our courts have used to determine the necessary degree of control a defendant must exercise to be subject to liability under this section.  Comment c provides:

8

"In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414 cmt. c (1965).

*Gregory*, 384 Ill. App. 3d at 187, 892 N.E.2d at 573.

¶ 27 Moreover, a possessor of land owes its invitees a common law duty of reasonable care in maintaining its premises in a reasonably safe condition. *Gregory*, 384 Ill. App. 3d at 191, 892 N.E.2d at 576. No legal duty arises unless the harm is reasonably foreseeable. *Gregory*, 384 Ill. App. 3d at 191, 892 N.E.2d at 576.

¶ 28 Section 343 of the Restatement (Second) of Torts provides:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

9

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

Restatement (Second) of Torts § 343 (1965).

*Gregory*, 384 Ill. App. 3d at 191, 892 N.E.2d at 576.

¶ 29     In the instant case, a DMG employee was operating a forklift owned by DMG and drove the forklift into a steel beam with plaintiff in front of the forklift, thereby crushing plaintiff between the forklift and steel beam.  This accident occurred on premises owned by DMG.  From these facts, the jury determined DMG's conduct was negligent and the proximate cause of plaintiff's injuries.

¶ 30     DMG asserts plaintiff's injury was not reasonably foreseeable because it was the independent contractors AVI and PMC that provided the defective cart and improperly rigged the cart to DMG's forklift, thereby creating a condition DMG could not guard against as the owner of the premises.  We disagree.

¶ 31     The accident in this case occurred at a facility owned, operated, and maintained by DMG.  Plaintiff and his fellow PMC laborers worked with one of DMG's employees in rigging DMG's pump to a forklift owned by DMG.  DMG's operator then pushed the forklift carrying the pump down a corridor, completely controlling the load and direction of the forklift.

¶ 32     Plaintiff's injury was foreseeable, as DMG's operator should have anticipated that plaintiff's injuries would result from the operator driving the forklift into a steel beam with plaintiff in front of the forklift.  DMG completely controlled the forklift, owned the

pump that crushed plaintiff into the steel beam, and owned the premises on which the accident occurred. Accordingly, DMG owed plaintiff a duty of reasonable care.

¶ 33                                B. Proximate Cause

¶ 34   DMG also alleges its operator of the forklift and the forklift itself were not the proximate cause of plaintiff's accident. DMG argues the proximate cause of the accident was AVI's defective cart and PMC's failure to properly rig the pump to AVI's cart and DMG's forklift.

¶ 35   Proximate cause is defined as " 'any cause which, in natural or probable sequence, produced the injury complained of. It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it, causes the injury.' " *Holton v. Memorial Hospital*, 176 Ill. 2d 95, 133, 679 N.E.2d 1202, 1219 (1997) (quoting Illinois Pattern Jury Instructions, Civil, No. 15.01 (1995) (hereinafter, IPI Civil (1995))).

¶ 36   Two tests are generally applied in determining the issue of proximate cause. *Kindernay*, 366 Ill. App. 3d at 570, 851 N.E.2d at 876. The first is the substantial-factor test, under which the defendant's conduct is a cause of an event if it was a material element and a substantial factor in bringing it about. *Kindernay*, 366 Ill. App. 3d at 570, 851 N.E.2d at 876. Under the second test, commonly referred to as the "but for" rule, the defendant's conduct is not a cause of an event if the event would have occurred without it. *Kindernay*, 366 Ill. App. 3d at 570, 851 N.E.2d at 876. The plaintiff bears the burden of establishing proximate cause by a preponderance of the evidence. *Kindernay*, 366 Ill. App. 3d at 570, 851 N.E.2d at 876.

11

¶ 37 If a jury finds that the defendant's negligence was a proximate cause of the plaintiff's injury, it is no defense that something else may also have been a cause of the injury. *Holton*, 176 Ill. 2d at 133, 679 N.E.2d at 1219. The "verdict should be for defendant if the jury decides 'that the *sole* proximate cause of injury to the plaintiff was *something* other than the conduct of the defendant.' " (Emphasis in original.) *Holton*, 176 Ill. 2d at 133, 679 N.E.2d at 1219 (quoting IPI Civil (1995) No. 12.05).

¶ 38 DMG indicates there can be more than one negligent act that creates the proximate cause of an injury. *Long v. Friesland*, 178 Ill. App. 3d 42, 55, 532 N.E.2d 914, 922 (1988). When an injury is caused by the concurrent negligence of two parties and the accident would not have occurred without the negligence of both, each party is a proximate cause of the injury. *Long*, 178 Ill. App. 3d at 55, 532 N.E.2d at 922.

¶ 39 However, as DMG points out, if the "alleged negligent act did nothing more than furnish a condition making the injury possible through the subsequent independent negligent act of a third party, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury." *Long*, 178 Ill. App. 3d at 55, 532 N.E.2d at 922. The test used to determine whether both acts constitute concurrent proximate cause is whether the first wrongdoer may have reasonably anticipated or foreseen the intervening cause as a natural and probable result of the first wrongdoer's negligence. *Long*, 178 Ill. App. 3d at 55, 532 N.E.2d at 922.

¶ 40 Here, DMG's operator drove a forklift owned by DMG into a steel beam, crushing plaintiff. The jury determined the operator's negligent conduct in controlling the forklift was a proximate cause of the accident. Based on the evidence presented at trial, a

12

reasonable jury could find that the operator's conduct of controlling the forklift met the foreseeability, substantial-factor, and but-for tests for the proximate cause of plaintiff's injuries. It is no defense to DMG that AVI and PMC were also a cause of plaintiff's injuries, as the jury still found DMG's own negligent conduct was a proximate cause of the accident. Accordingly, DMG's assertion that its forklift and operator were not a proximate cause of plaintiff's accident is mistaken.

¶ 41    DMG lastly alleges the trial court erred in denying its motion for a new trial, as the jury's verdict was unreasonable, arbitrary, and not based upon any evidence. DMG asserts it should be granted a new trial because each witness provided testimony that the accident occurred because the cart was not properly rigged, and no single witness testified that DMG's forklift malfunctioned or that the operator of the forklift drove it erratically.

¶ 42    DMG's argument is misguided. While it may be true that the forklift did not malfunction and was not driven erratically, the record clearly indicates DMG's employee was operating the forklift that crushed plaintiff into a steel beam. Furthermore, the 28,500-pound water pump being transported on defendant's forklift that crushed plaintiff into the steel beam was owned by DMG, and the accident occurred on DMG's premises.

¶ 43    After careful review of the evidence presented at trial, we cannot say the jury's findings were unreasonable, arbitrary, or against the manifest weight of the evidence. The trial court did not err in denying DMG's motion for a directed verdict or judgment notwithstanding the verdict, nor did it abuse its discretion in denying DMG's motion for a new trial on the grounds that plaintiff failed to show DMG owed plaintiff a duty of care

13

and failed to prove DMG's negligence proximately caused plaintiff's injuries.

¶ 44                           II.  AVI

¶ 45              A.  Motion for Directed Verdict and Posttrial Relief

¶ 46    AVI alleges the trial court erred in granting a directed verdict in favor of plaintiff at the close of plaintiff's evidence and erred in denying AVI's posttrial relief.  AVI contends it was error for the trial court to instruct the jury that it had directed a verdict against AVI before the defense offered any evidence, as this limited AVI's ability to present evidence and argue its case.  Further, AVI asserts the trial court never instructed the jury as to the reason it directed a verdict against AVI, and alleges the trial court's rulings were clearly erroneous, contrary to logic and law, and should be reversed.

¶ 47    In the instant case the trial court directed negligence liability and product liability against AVI based on certain statements made by AVI employees during trial.  The dispositive issue in this case is whether these statements constituted judicial admissions to which the trial court directed a verdict in favor of plaintiff and against AVI.

¶ 48    A judicial admission is a (1) deliberate, (2) clear, (3) unequivocal, (4) statement of a party, (5) about a concrete fact, (6) within that party's peculiar knowledge.  *Brummet v. Farel*, 217 Ill. App. 3d 264, 266, 576 N.E.2d 1232, 1234 (1991).  A judicial admission is conclusive upon the party making it, and may not be controverted at trial or on appeal.  *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234.

¶ 49    A judicial admission is not evidence at all, but rather has the effect of withdrawing a fact from contention.  *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234.  Judicial admissions include "admissions made in pleadings, formal admissions made in open

14

court, stipulations, and admissions pursuant to requests to admit." *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234.

¶ 50 The doctrine of judicial admission requires thoughtful consideration to ensure that "justice not be done on the strength of a chance statement made by a nervous party." *Thomas v. Northington*, 134 Ill. App. 3d 141, 147, 479 N.E.2d 976, 981 (1985). The general rule is qualified. Judicial admissions only apply when a party's testimony, taken as a whole, is unequivocal. *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234. The rule is inapplicable when the party's testimony is inadvertent, uncertain, or amounts to an estimate rather than a statement of concrete fact. *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234. Further, the rule is inapplicable when the facts relate to a matter about which the party could have been mistaken, such as swiftly moving events preceding a collision in which the party was injured. *Brummet*, 217 Ill. App. 3d at 267, 576 N.E.2d at 1234.

¶ 51 The trial court's ruling on an issue of judicial admission is a matter for the trial court's sound discretion, and we are to affirm the trial court unless it abused that discretion. *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468, 914 N.E.2d 1258, 1268 (2009). An abuse of discretion is found only where no reasonable person would take the view adopted by the trial court. *Smith*, 394 Ill. App. 3d at 468, 914 N.E.2d at 1268.

¶ 52 A party may, by his own testimony, "conclusively bar his claim or his defense," but whether a party's testimony defeats his own claim depends upon an evaluation of all of his testimony, and not just a portion of it. *McCormack v. Haan*, 20 Ill. 2d 75, 78, 169 N.E.2d 239, 240-41 (1960). The abuse of discretion standard focuses on the context of

15

the purported admission:

> "What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found. [Citation.] It must also be considered in relation to the other testimony and evidence presented." *Smith*, 394 Ill. App. 3d at 468, 914 N.E.2d at 1268.

¶ 53 In the instant case, several witnesses testified concerning AVI's involvement in plaintiff's accident. One such witness was Scott Docimo, an AVI employee who was the only AVI representative on-site at the power plant at the time of plaintiff's accident. Docimo was at the power plant to provide technical supervision and inspection concerning the removal of equipment at the plant. During trial Docimo admitted he saw workers rigging the load onto the forklift improperly, knew it was unsafe, and said nothing despite his superior knowledge.

> "Q. [Attorney for plaintiff:] You knew that they were pushing it in a way– you were the expert, and you let them push it, and you let the play develop right in front of you. And part of the reason that the cart was going squiggly, was because of how it was rigged, am I right?
>
> A. Correct.
>
> Q. And I want you to go to Page 133, Line 17. I said, 'What ***' The question was asked, 'Would anything have prevented you from telling them that?' Telling them that, warning them, doing your job. What did you say on Line 17? What would have prevented you? Read the answer.

A. 'Yes. Sorry. Yes, it would because of liability. For me to tell them how to rig something, automatically puts liability onto me, which I'm not there for.'

Q. You never told anyone before this accident that they should not rig it that way, did you?

A. No."

¶ 54 Clifford Burrell, the president of AVI, also testified during trial and admitted Docimo should have said something when he saw the men improperly rigging the load onto the forklift.

"Q. [Attorney for plaintiff:] He did not say anything. So that there's no misunderstanding then, sir, you're here to tell me, as the head of this company, that Mr. Docimo, who admitted that he saw something unsafe and didn't say anything, he should have said something, am I correct?

A. Yes.

Q. Yes. And so that we can have no further disagreement between you and I, is that–there's no misunderstanding. You would then agree that the reason–if this cart didn't go straight, it was because it was unsafely affixed, and Docimo should have said something about it, am I right?

A. Yes."

¶ 55 Burrell then admitted that AVI's cart was intended to roll straight but failed to do so at the time of plaintiff's accident. Burrell indicated AVI's cart possessed caster locks and was capable of locking its wheels for the purpose of keeping the wheels straight, but

admitted he had not informed Docimo or anyone from DMG or PMC about the feature:

"Q. [Attorney for plaintiff:] Did you ever tell the guy who you sent to be your representative on this job, did you ever tell him that that cart could be locked?

A. No.

Q. You never told him. Did you tell anybody from AVI that the cart could be locked? Or strike that. From DMG, did you tell anybody from DMG that when you want to take this cart and start going north and south with it, you can lock it so the wheels won't wobble? Did you tell anybody from [DMG] that?

A. I was not there.

Q. Did you tell them before you sent it?

A. No.

Q. Did you tell anybody from PMC that this cart that you had designed, manufactured, specified, did you tell them that the wheels could be locked?

A. No.

Q. Did anybody know?

A. No."

¶ 56    Based on these admissions made by Docimo and Burrell, the trial court directed negligence and product liability against AVI. After careful review of the record before us, we cannot say the trial court abused its discretion in finding AVI's testimony contained judicial admissions that it was negligent in supervising the transportation of the water pump from the power plant and strictly liable for the defective cart that contributed

18

to plaintiff's injuries. The trial court never suggested how much fault the jury should attribute to AVI, only that it could not be completely free of fault. AVI retained the right to argue for a low percentage of fault, which it in fact did. Directing a verdict against AVI for negligence and product liability was well within the trial court's discretion.

¶ 57 AVI asserts that Docimo, an AVI employee not in the control group of AVI, was not a party to the proceeding and, therefore, legally could not have made a judicial admission on behalf of AVI. While AVI accurately indicates Docimo was not a party to the action, AVI fails to recognize that Burrell, as president of AVI, also testified and admitted fault concerning AVI's negligence and product liability. As president of AVI, Burrell was certainly within the control group of AVI and had the ability to make judicial admissions on behalf of AVI, which he did.

¶ 58 AVI next asserts the trial court improperly directed the issue of proximate cause against AVI at the close of plaintiff's case. AVI indicates the issue of proximate cause is ordinarily a question of fact to be determined by a jury from a consideration of all the evidence. *Sabo v. T.W. Moore Feed & Grain Co.*, 97 Ill. App. 2d 7, 9, 239 N.E.2d 459, 463 (1968). AVI argues the trial court directed the issue of proximate cause against AVI with no legal or factual support. We disagree.

¶ 59 AVI ignores that where facts are undisputed and reasonable men could not differ as to the inferences to be drawn from those facts, proximate cause may be determined as a matter of law. *Harrison v. Hardin County Community Unit School District No. 1*, 197 Ill. 2d 466, 476, 758 N.E.2d 848, 854 (2001) (Harrison, C.J., specially concurring, joined by Kilbride, J.). Here, the undisputed facts indicate AVI cannot be free of responsibility

19

for plaintiff's injuries, as AVI owned and maintained the cart that contributed to plaintiff's injuries.

¶ 60    Moreover, Scott Docimo, the AVI employee who was at the power plant to provide technical supervision and inspection for the removal of the pump, witnessed workers improperly rig the pump to AVI's cart and DMG's forklift and said nothing. Docimo could have prevented the accident from occurring by warning the workers that they improperly rigged the pump to the cart and forklift but did not.  Further, Burrell testified he did not inform anyone of the caster-lock feature on the cart which would have positioned the wheels to move straight rather than side to side.

¶ 61    It is unreasonable for AVI to allege it was not in any way a proximate cause of plaintiff's injuries.  Accordingly, the trial court properly directed the issue of proximate cause against AVI.

¶ 62    AVI then alleges the record does not support a finding of negligence or product liability against AVI.  We disagree.  We find that Docimo and Burrell's testimony supports a finding of AVI's negligence and strict product liability.

¶ 63    In pleading negligence, the plaintiff must allege facts showing the defendant: (1) owed him or her a duty of care, (2) breached that duty, and (3) this breach was the proximate cause of his or her injuries.  *Rahic v. Satellite Air-Land Motor Service, Inc.*, 2014 IL App (1st) 132899, ¶ 19, 24 N.E.3d 315.

¶ 64    Here, Docimo admitted he did not say anything to the PMC employees or DMG operator when he saw them improperly rig the pump to the cart and forklift, and Docimo's boss and president of AVI, Burrell, condemned this silence as inexcusable.

20

The trial court directed negligence liability on this basis. As the sole AVI employee on-site to provide supervision for the removal of the pump, Docimo owed a duty of care to plaintiff that was breached when Docimo did not inform the workers they had improperly rigged the pump to the cart and forklift, and this improper rigging was the cause of plaintiff's accident. Thus, the elements of AVI's negligence have been satisfied and AVI's argument that the record does not support a finding of negligence is mistaken.

¶ 65 AVI also argues the record does not support a finding on the product liability claim. To prevail on a product liability claim alleging defective design, the plaintiff must establish that the allegedly defective condition of the product is a proximate cause of his injury. *Barr v. Rivinius, Inc.*, 58 Ill. App. 3d 121, 127, 373 N.E.2d 1063, 1067 (1978). The standards for proving proximate causation are the same whether the case concerns negligence or strict liability in tort. *Barr*, 58 Ill. App. 3d at 127, 373 N.E.2d at 1067. "Proximate cause exists if the injury is the natural and probable result of the negligent act or omission and is of such a character that an ordinarily prudent person would have foreseen it as a result of such negligence." *Niffenegger v. Lakeland Construction Co.*, 95 Ill. App. 3d 420, 425, 420 N.E.2d 262, 267 (1981).

¶ 66 The intervention of independent, concurrent, or intervening forces will not disrupt the causal connection if such intervention was foreseeable. *Niffenegger*, 95 Ill. App. 3d at 426, 420 N.E.2d at 267. "[A] plaintiff may demonstrate that a product is unreasonably dangerous because of a design defect by presenting evidence of an alternative design that would have prevented the injury and was feasible in terms of cost, practicality and technological possibility." *Hansen v. Baxter Healthcare Corp.*, 198 Ill. 2d 420, 436, 764

21

N.E.2d 35, 45 (2002).

¶ 67   In the instant case, Burrell admitted that as president of AVI, he designed the cart in question so that it moves straight when pushed.  Burrell then admitted the cart did not move straight at the time of plaintiff's accident, and Docimo also acknowledged the cart was wobbly.  Burrell then admitted he did not tell anyone that the AVI cart had caster locks built into the cart before it was used at DMG's power plant.  The caster locks would have enabled the wheels to move straight, and it is reasonable to conclude plaintiff's accident would not have occurred if the workers had known about the caster-lock feature. We find AVI's failure to inform the workers on-site of the caster-lock feature and AVI's acknowledgement that the cart was not moving straight as intended during the accident amounts to a defective condition that supports a finding of product liability.

¶ 68   AVI argues the trial court's failure to define the conduct of AVI on which it directed the verdict of negligence as a matter of law was tantamount to failing to instruct the jury on an issue, which was an abuse of discretion that prejudiced AVI.  However, AVI fails to indicate how it was prejudiced.  AVI also indicates that for negligent design theory, plaintiff was required to produce evidence of the standard of care in the industry at the time of design and a deviation from that standard.  AVI asserts this proof required expert opinion testimony, but plaintiff disclosed no expert and offered no expert testimony concerning its cart's design.

¶ 69   For the reasons stated above, we find that Docimo and Burrell's testimony satisfied the proof necessary for the trial court to direct a verdict of negligence against AVI, and this matter need not be addressed further.

22

¶ 70　In its reply brief, AVI argues there is no legal precedent for entering a directed verdict against a party who has had no opportunity to present any evidence in the case unless that party was defaulted. AVI contends plaintiff's argument that the trial court was well within its discretionary powers to order a directed verdict against AVI at the close of plaintiff's case in chief is legally wrong. We disagree.

¶ 71　The fact that the trial court directed a verdict against AVI before AVI offered evidence contrary to the overwhelming evidence against it does not necessitate a jury determination on the question of AVI's negligence or product liability. "As the light from a lighted candle in a dark room seems substantial but disappears when the lights are turned on, so may weak evidence fade when the proof is viewed as a whole." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 504-05, 229 N.E.2d 504, 510 (1967).

¶ 72　Constitutional guarantees are not impaired by a directed verdict despite the presence of some slight evidence to the contrary, for the right to a jury trial includes the right to a jury verdict only if there are factual disputes of some substance. *Pedrick*, 37 Ill. 2d at 505, 229 N.E.2d at 510. Further, once a party makes a judicial admission adverse to his or her claim, that party cannot contradict the admission by adopting inconsistent evidence produced by other witnesses. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 71 Ill. App. 3d 562, 568, 390 N.E.2d 60, 64 (1979).

¶ 73　As noted above, we find no factual dispute that AVI was at least partially responsible for plaintiff's injuries. The fact the trial court directed a verdict against AVI before AVI presented any evidence is irrelevant, as the only matter foreclosed by the trial court's directed verdict was that AVI was 0% at fault for plaintiff's accident. AVI

retained the right to argue a low percentage of fault to the jury, which AVI did.

¶ 74    AVI also requests that this court enter a judgment notwithstanding the verdict in its favor.  As discussed above, a judgment notwithstanding the verdict is properly entered where all the evidence, when viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could stand.  *Ford*, 398 Ill. App. 3d at 650, 924 N.E.2d at 542.

¶ 75    Considering all the evidence in the light most favorable to AVI, the evidence so overwhelmingly favors plaintiff in this case that no contrary verdict can stand on the issue of AVI's negligence and product liability.  Accordingly, the trial court did not abuse its discretion in directing verdicts of negligence and product liability against AVI, the trial court's verdicts were not against the manifest weight of the evidence, and the trial court did not err in denying AVI's motion for a judgment notwithstanding the verdict.

¶ 76                                     B.  Motion for New Trial

¶ 77    AVI alleges it was deprived of a fair trial as a result of multiple and cumulative errors in the trial court's rulings, and asserts it should be granted a new trial.

¶ 78    A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that the court clearly abused its discretion.  *Reidelberger v. Highland Body Shop, Inc.*, 83 Ill. 2d 545, 548, 416 N.E.2d 268, 270 (1981).  An abuse of discretion is found only where no reasonable person would take the view adopted by the trial court.  *Smith*, 394 Ill. App. 3d at 468, 914 N.E.2d at 1268.  For the following reasons, we find AVI's arguments lack merit.

¶ 79    AVI first alleges the trial court erred in allowing testimony from June Hight, Dr.

24

Kirby, and Jason Reynolds. AVI indicates June Hight was not disclosed as a trial witness until two weeks before trial without reason, but was allowed to testify over objection. AVI indicates Dr. Kirby was allowed to testify concerning opinions not in his records on permanency and prognosis, and all of AVI's objections to Dr. Kirby's testimony were overruled without hearing. AVI also alleges Jason Reynolds of DMG was not disclosed to give any opinion testimony, but the trial court allowed plaintiff to ask leading questions adverse only to AVI based on what Reynolds had seen and heard in the courtroom. AVI asserts the trial court's rulings violated Illinois Supreme Court Rules 213(f) (eff. Jan. 1, 2007) and 218 (eff. Oct. 4, 2002).

¶ 80    AVI also alleges the trial court allowed improper impeachment of its witnesses. AVI asserts Mr. O'Leary was impeached by the absence of content in his statements and deposition rather than contrary statements. AVI also alleges plaintiff's counsel impeached Docimo by the absence of content in his statements and deposition and not by contrary statements, and contends the law regarding impeachment was ignored. We disagree with AVI's arguments.

¶ 81    AVI offers no explanation as to why these witnesses' testimony violated Supreme Court Rules 213(f) and 218, and cites no supporting authority in its brief based on these claims. AVI also offers no explanation for how it was prejudiced or what was improper about the impeachment. "[I]t is well settled that *** bare contentions that fail to cite any authority do not merit consideration on appeal." (Internal quotation marks omitted.) *People v. Fredericks*, 2014 IL App (1st) 122122, ¶ 64, 14 N.E.3d 576. AVI has failed to raise these issues adequately. In light of the foregoing circumstances, we find it

25

unnecessary to address these matters further.

¶ 82    AVI then alleges plaintiff's counsel used improper lines of inquiry.  AVI points to specific instances of questioning regarding Docimo and Burrell that were allegedly improper, but offers no supporting authority or explanation.  For this reason, we need not address this argument.

¶ 83    AVI next alleges the trial court improperly tendered Illinois Pattern Jury Instructions, Civil, No. 5.01 (2011) (hereinafter, IPI Civil (2011)) against AVI for its failure to bring its cart to trial which resulted in prejudice to AVI.  As a result, AVI contends it should be granted a new trial.

¶ 84    The decision whether to tender IPI Civil (2011) No. 5.01 to the jury is within the sound discretion of the trial court, and that decision will not be reversed absent a clear abuse of discretion.  *Kersey v. Rush Trucking, Inc.*, 344 Ill. App. 3d 690, 696, 800 N.E.2d 847, 853 (2003).  IPI Civil (2011) No. 5.01, also known as the "missing-evidence instruction," allows a jury to draw an adverse inference from a party's failure to offer evidence.  *Kersey*, 344 Ill. App. 3d at 696, 800 N.E.2d at 852.

¶ 85    IPI Civil (2011) No. 5.01 may be properly given where some foundation is presented on each of the following: (1) the evidence was under the control of the party and could have been produced through the exercise of reasonable diligence, (2) the evidence was not equally available to the adverse party, (3) a reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed the evidence to be in his favor, and (4) no reasonable excuse for the failure has been shown.  *Jenkins v. Dominick's Finer Foods, Inc.*, 288 Ill. App. 3d 827, 831, 681 N.E.2d

26

129, 132 (1997). However, IPI Civil (2011) No. 5.01 is not warranted where the missing evidence is merely cumulative of the facts already established. *Jenkins*, 288 Ill. App. 3d at 831, 681 N.E.2d at 132.

¶ 86    Here, the trial court tendered IPI Civil (2011) No. 5.01 after Burrell's testimony concerning the caster-lock feature on the cart and Burrell's assertion that the cart could push 52,000 pounds across a flat concrete surface. The trial court indicated that because AVI's cart was not equally available to the parties and was under AVI's sole control, the cart should have been produced at trial as there were still issues concerning the cart to be decided by the jury. We do not find the trial court abused its discretion in tendering IPI Civil (2011) No. 5.01. We agree that the cart was not equally available to the parties and was in the sole control of AVI, and, therefore, should have been produced at trial.

¶ 87    AVI argues the adverse presumption of not producing the cart at trial was irrelevant because the trial court had already decided liability. We disagree. While the trial court had already directed a verdict when it tendered IPI Civil (2011) No. 5.01, each party's degree of fault was still an issue to be decided by the jury, and production of the cart as evidence at trial would have helped the jury in that determination.

¶ 88    AVI also contends it was improper for the trial court to tender IPI Civil (2011) No. 5.01 immediately before releasing the jury to consider defendant's fault. We disagree. The jury found AVI 37% at fault for plaintiff's accident and DMG 47% at fault. After careful review of the record, we find this apportionment of fault reasonable. Reversal is not warranted if it is unlikely the error influenced the jury. *People v. Hall*, 194 Ill. 2d 305, 339, 743 N.E.2d 521, 541 (2000). Because AVI's proportion of fault was

27

reasonable, we find that even if it was error for the trial court to tender IPI Civil (2011) No. 5.01, it was not an error that influenced the jury warranting a new trial.

¶ 89  AVI next asserts the trial court improperly barred AVI *in limine* and during trial from presenting testimony regarding the specific cart in question, precluding AVI from eliciting testimony that DMG utilized the same AVI cart at its facility subsequent to the date of loss on other jobs, and that DMG designed and built its own cart using the same exact design as the AVI cart.  This argument is irrelevant to the trial court's finding of negligence and product liability against AVI.

¶ 90  AVI then alleges the trial court erred in allowing plaintiff's counsel to submit a closing and rebuttal argument that was attacking and personal to opposing counsel, inflammatory, prejudicial and punitive in nature, engaging in argument with opposing counsel rather than an argument to the jury concerning the evidence, and unfounded by the evidentiary record.  We disagree.

¶ 91  AVI indicates plaintiff's counsel argued the credibility of defense counsel, pointed a finger at AVI's counsel, and addressed AVI's counsel personally during the proceedings.  We find plaintiff counsel's conduct was trial strategy that did not rise to the level of prejudice meriting reversal of the trial court's denial of AVI's motion for a new trial.

¶ 92  Finally, AVI alleges the trial court erred in numerous submissions and rejections of jury instructions.  AVI asserts the trial court erred in submitting plaintiff's instruction No. 11/IPI Civil (2011) No. 20.01 to the jury and rejecting AVI's proposed instruction No. 1 and AVI's instruction No. 7/IPI Civil (2011) No. B21.07.  AVI asserts the trial

court erred in submitting plaintiff's instruction No. 15/IPI Civil (2011) Nos. 30.01, 30.04, 30.05, 30.06, and 30.07.

¶ 93    AVI also alleges the trial court erred in submitting plaintiff's instruction No. 18/verdict form IPI Civil (2011) No. 600.14 modified and rejecting AVI's alternative instruction No. 2/IPI Civil (2011) Nos. 600.14, 30.04, 30.05, 30.06, and 30.07 modified. Furthermore, AVI alleges the trial court erred in rejecting AVI's instruction No. 4/IPI Civil (2011) No. 5.01 as to DMG employee William Harms, and alleges the trial court erred in rejecting AVI's instruction No. 9/IPI Civil (2011) No. 41.05, instruction No. 11/IPI Civil (2011) No. 600.02, and instruction No. 12/IPI Civil (2011) No. 600.04.

¶ 94    The trial court has discretion to determine which instructions to give the jury, and that determination will not be disturbed without an abuse of that discretion. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273, 775 N.E.2d 964, 972 (2002). The standard for deciding whether a trial court abused its discretion is whether, taken as a whole, the instructions fairly, fully, and comprehensively apprised the jury of the relevant legal principles. *Schultz*, 201 Ill. 2d at 273-74, 775 N.E.2d at 972-73. Moreover, "[a] reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless [the instructions] clearly misled the jury and resulted in prejudice to the appellant." *Schultz*, 201 Ill. 2d at 274, 775 N.E.2d at 973.

¶ 95    As discussed above, we find the jury's apportionment of 37% fault to AVI reasonable after careful review of the record. AVI has failed to establish it was prejudiced by the abovementioned jury instructions or that the jury was misled.

29

¶ 96                    C. Plaintiff's Second Amended Complaint

¶ 97    AVI alleges plaintiff's second amended complaint was factually and legally deficient on its face warranting its dismissal.  AVI asserts the record on appeal indicates plaintiff's second amended complaint was never filed and, therefore, the trial court's corresponding entry of directed verdict, judgment, and other rulings against AVI premised on that complaint were improper.  We disagree.

¶ 98    After careful review of the record, we find the record indicates plaintiff's second amended complaint was file-stamped by the circuit clerk on November 4, 2013. Moreover, AVI filed a motion to dismiss plaintiff's second amended complaint on November 12, 2013, and filed its answer and affirmative defenses to plaintiff's second amended complaint on November 18, 2013.  For these reasons, AVI's argument that plaintiff failed to file his second amended complaint lacks merit.

¶ 99    AVI next asserts that if plaintiff's second amended complaint is deemed to have been filed, it nevertheless fails to satisfy Illinois pleading requirements.

¶ 100 A complaint only needs to contain a "plain and concise statement of plaintiff's cause of action; it is unnecessary for the complaint to set forth evidence that plaintiff intends to introduce at trial." *Lozman v. Putnam*, 328 Ill. App. 3d 761, 769, 767 N.E.2d 805, 812 (2002).  Pleadings in the complaint are liberally construed " 'with a view to doing substantial justice between the parties.' " *Lozman*, 328 Ill. App. 3d at 769, 767 N.E.2d at 812 (quoting 735 ILCS 5/2-603(c) (West 2000)).  A cause of action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proved under the pleadings which would entitle plaintiff to recover.  *Lozman*, 328 Ill. App. 3d at

769, 767 N.E.2d at 812-13.

¶ 101 AVI alleges plaintiff pled no facts giving rise to any duty owed by AVI to inspect and control the forklift, the forklift's operation, and the premises, and alleges plaintiff's complaint was void of factual support for plaintiff's product liability allegations. AVI's argument is misguided.

¶ 102 In his complaint plaintiff alleged he was crushed into a steel beam by a forklift pushing a cart owned and maintained by AVI. In his negligence count, plaintiff alleged AVI designed, manufactured, and supplied the cart giving rise to plaintiff's injuries, and supervised the incident in which plaintiff was injured. Plaintiff also alleged AVI furnished a defective, unsafely designed, and unsafely maintained cart, and failed to warn plaintiff of impending peril. In his product liability count, plaintiff alleged the cart was in a defective and unreasonably dangerous condition at the time it left the possession and control of AVI.

¶ 103 These alleged facts are enough to state a cause of action. Accepting the factual allegations in plaintiff's complaint as true and considering them in a light most favorable to plaintiff, sufficient facts have been pled to demonstrate AVI's negligence and product liability. Plaintiff has pled a connection between plaintiff's injuries and AVI's potential negligence and product liability. Accordingly, plaintiff's second amended complaint alleges sufficient facts to satisfy the Illinois pleading standard.

¶ 104                D. Timeliness of Plaintiff's Product Liability Claim

¶ 105 AVI alleges plaintiff's untimely submission of the product liability claim violated the statutes of limitation and repose. AVI asserts there is no dispute that plaintiff's

31

product liability claim was governed by Illinois's two-year statute of limitations period, and, therefore, plaintiff's claim had to be filed on or before October 8, 2009, two years from the date of plaintiff's accident. 735 ILCS 5/13-202 (West 2012). Since plaintiff's product liability claim was filed on November 4, 2013, more than six years after plaintiff's accident and four years after the statute of limitations period expired, AVI contends plaintiff's submission was untimely. AVI also asserts the relation back doctrine does not apply.

¶ 106 Section 2-616(b) of the Code of Civil Procedure provides that a cause of action alleged in an amended complaint, filed after the expiration of the statute of limitations period, will relate back to the filing of the original complaint if two requirements are met: (1) the original pleading was timely filed, and (2) the original and amended pleadings indicate the cause of action asserted in the amended complaint grew out of the same transaction or occurrence set forth in the original proceeding. 735 ILCS 5/2-616(b) (West 2012); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 106, 672 N.E.2d 1207, 1222-23 (1996). This rule is "remedial in nature and should be liberally construed in favor of hearing the plaintiff's claim." *Bryson*, 174 Ill. 2d at 106, 672 N.E.2d at 1223.

¶ 107 In the instant case, plaintiff's product liability count relates back to the filing of plaintiff's negligence count against AVI. Plaintiff filed a first amended complaint on October 1, 2008, alleging a single count of negligence against AVI arising from plaintiff's accident at the power plant. Plaintiff's first amended complaint was timely, as it was filed within two years of his accident. Accordingly, the first requirement of the relation back doctrine has been met. The second requirement of the relation back doctrine is also

32

satisfied here, as plaintiff's product liability count arises from the same accident as the negligence count. Hence, plaintiff's product liability count against AVI properly relates back to the timely filing of plaintiff's negligence count against AVI, and the statute of limitations has not been violated.

¶ 108 AVI argues plaintiff's product liability count asserted new causes of action premised on facts distinct in scope and time from plaintiff's negligence count against AVI. We disagree. Plaintiff's negligence and product liability counts both arose from the same accident at the same power plant that occurred at the same time in question. Plaintiff's product liability count was not premised on facts distinct in scope and time from plaintiff's negligence count.

¶ 109 AVI also asserts plaintiff's untimely filing of the product liability count against AVI violated the Illinois statute of repose. No strict product liability action shall be commenced except within the applicable limitations period and within 12 years from the date of the first sale, lease, or delivery by a seller, or 10 years from the date of the first sale, lease, or delivery to its initial user, consumer, or other nonseller, whichever period expires earlier. *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 30, 959 N.E.2d 94. AVI indicates its cart was manufactured and released in 1999, and, therefore, the 12-year repose period expired at the latest in 2011. AVI contends plaintiff's strict product liability claim filed in 2013 was outside the 12-year repose period and violated the statute. We disagree.

¶ 110 The record indicates AVI was a lessor of its cart, as AVI repeatedly placed its cart in the stream of commerce for over a decade and obtained profits each time the cart was

33

leased.  "Anyone who is in the business of placing a defective product into the stream of commerce by leasing it, rather than selling it, may be strictly liable for any injuries which proximately result therefrom."  *Timm v. Indian Springs Recreation Ass'n*, 187 Ill. App. 3d 508, 511, 543 N.E.2d 538, 541 (1989).

¶ 111  The accident in the instant case occurred in 2007, and plaintiff filed a strict product liability claim against AVI in 2013.  Hence, plaintiff brought his product liability claim six years after AVI leased its cart, well within the statute of repose.  AVI's argument that its cart was manufactured more than 12 years from the time plaintiff brought his product liability claim is of no avail, as AVI fails to recognize it was a lessor of the cart rather than a seller at the time of plaintiff's accident.

¶ 112                              E.  Eleventh-Hour Filing

¶ 113  In its final issue raised on appeal, AVI alleges the trial court's consent to plaintiff's eleventh-hour filing of new causes of action and the trial court's denial of AVI's motion for a trial continuance were contrary to law, prejudicial to AVI, and an abuse of discretion.

¶ 114  Section 2-616(c) of the Code of Civil Procedure provides:

> "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just."  735 ILCS 5/2-616(c) (West 2012).

¶ 115  The four relevant factors to be considered in determining whether to allow pleading amendments are:

"(1) whether the proposed amendments would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) the timeliness of the proposed amendment; and (4) whether previous opportunities to amend the pleadings could be identified." *Arroyo v. Chicago Transit Authority*, 268 Ill. App. 3d 317, 322, 643 N.E.2d 1322, 1326 (1994).

¶ 116 Whether to allow an amendment to pleadings is within the sound discretion of the trial court, whose determination will not be disturbed on appeal in the absence of an abuse of discretion. *Lewandowski v. Jelenski*, 401 Ill. App. 3d 893, 897, 929 N.E.2d 114, 119 (2010). A trial court abuses its discretion if no reasonable person would take the view adopted by the trial court. *Lewandowski*, 401 Ill. App. 3d at 897, 929 N.E.2d at 119. The trial court should exercise its discretion liberally in favor of allowing amendment if allowing it will further the ends of justice. *Arroyo*, 268 Ill. App. 3d at 322, 643 N.E.2d at 1326.

¶ 117 AVI alleges plaintiff's amendment resulted in prejudice and hardship to AVI, as it was left with no time to disclose experts on plaintiff's product liability claim. AVI claims the amendment changed the nature of the action it faced at trial, including the nature and quality of proof required to defend, and the trial court abused its discretion in allowing the amendment. AVI also claims it was prejudiced by the trial court's refusal of a continuance. We disagree.

¶ 118 In the instant case, plaintiff's motion to amend the pleadings came two weeks prior to trial. While AVI claims it was prejudiced by plaintiff's eleventh-hour filing adding a

product liability claim, it fails to indicate how it was prejudiced. AVI does not explain why it was prejudiced by the trial court's refusal of a trial continuance, and does not indicate what experts it wanted to testify concerning plaintiff's product liability claim. Moreover, AVI was alerted to the issues concerning its defective cart in 2009 through its own discovery questions. AVI was already on notice of its defective cart, and to claim it was prejudicial for plaintiff to bring a product liability claim against AVI is unreasonable. We therefore conclude the trial court was within its discretion to allow plaintiff's eleventh-hour request to amend his complaint two weeks prior to trial.

¶ 119 AVI indicates that amendments brought at the start of trial are inappropriate when they could have been brought earlier, as they alter the evidence required to defend and foreclose the time a party has to engage in discovery and procure requisite witnesses to defend the amended allegations. *Arroyo*, 268 Ill. App. 3d at 322-23, 643 N.E.2d at 1326. *Arroyo* is distinguishable from the case at bar.

¶ 120 In *Arroyo*, the court denied the plaintiff's motion to amend complaint that was brought 1 day before the scheduled trial date and 11 years and 7 months after the initial filing of the complaint. The time frame in the instant case is not comparable. Here, plaintiff's motion to amend was filed 2 weeks prior to the scheduled trial date rather than 1 day, and was filed approximately 5 years after the original complaint was filed rather than 11-plus years. Accordingly, we find the trial court was well within its discretion to allow plaintiff to amend his complaint.

¶ 121                                    CONCLUSION

¶ 122 For the reasons stated herein, we affirm the judgment of the circuit court of St.

36

Clair County.

¶ 123   Affirmed.

2015 IL App (5th) 140168

NO. 5-14-0168

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| GERALD DUNNING, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 08-L-2 |
| | ) | |
| DYNEGY MIDWEST GENERATION, INC., a | ) | |
| Corporation, and AVI INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants and Third-Party Plaintiffs-Appellants | ) | |
| | ) | Honorable |
| (Power Maintenance Constructors, Inc., | ) | Andrew J. Gleeson, |
| Third-Party Defendant-Appellee). | ) | Judge, presiding. |

_____

**Opinion Filed:**          April 28, 2015

_____

**Justices:**          Honorable Richard P. Goldenhersh, J.

Honorable Bruce D. Stewart, J., and
Honorable S. Gene Schwarm, J.,
Concur

_____

**Attorneys for Appellants**          James L. Hodges, Hennessy & Roach, P.C., 415 North 10th Street, Suite 200, St. Louis, MO 63101 (attorney for Dynegy Midwest Generation, Inc.); Loretta M. Griffin, Ana Maria L. Downs, Law Offices of Loretta M. Griffin, 20 North Clark Street, Suite 2725, Chicago, IL 60602 (attorneys for AVI International, Inc.)

_____

**Attorneys for Appellee**          Thomas Q. Keefe, Jr., Thomas Q. Keefe, III, Keefe & Keefe, P.C., #6 Executive Woods Court, Belleville, Illinois 62226 (attorneys for Gerald Dunning)

_____